

SO ORDERED,

**Judge Selene D. Maddox**

**United States Bankruptcy Judge**

The Order of the Court is set forth below. The case docket reflects the date entered.

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| **IN RE: UNITED FURNITURE INDUSTRIES, INC.,** *et al.* | **CASE NO.: 22-13422-SDM** |
| **DEBTORS** | **CHAPTER 11**<br>**JOINTLY ADMINISTERED** |
| **TORIA NEAL, JAMES PUGH, KALVIN HOGAN,**<br>**AND OTHERS SIMILARLY SITUATED** | **PLAINTIFFS** |
| **v.** | **ADV. PRO. NO.: 23-01005-SDM[1]**<br>**SUBSTANTIVELY CONSOLIDATED** |
| **UNITED FURNITURE INDUSTRIES, INC.,** *et al.* | **DEFENDANTS** |

## MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS' PARTIAL MOTION FOR SUMMARY JUDGMENT

The Plaintiffs urge this Court to find as a matter of law that the Defendants have failed to

satisfy the statutory requirements under the WARN Act, specifically the obligation to provide a

---

[1] On August 11, 2023, the Court entered its *Order Granting Motion to Appoint Interim Co-Lead Counsel and Consolidate Adversary Proceedings* (A.P. Dkt. #36), which substantively consolidated all pending adversary proceedings concerning the Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 *et seq.* (the "WARN Act") and other labor laws and claims with this adversary proceeding. Any reference to the United States Code in this Opinion and Order will be to Title 29 unless the Court indicates otherwise.

"brief statement" explaining their failure to give the required 60-day notice prior to the termination

of roughly 2,700 employees. As will be discussed thoroughly below, the WARN Act mandates that

employers notify affected employees at least 60 days before a mass layoff or plant closing unless

they fall within one of the statutory exceptions and supply a brief statement outlining the reasons

for their noncompliance when notice is finally given. After a thorough review of the parties'

pleadings[2] and arguments at the hearing conducted on August 22, 2024, the Court finds that United

Furniture Industries, Inc. ("UFI") did not adhere to this requirement. Despite failing to provide the

60-day notice, UFI also failed to offer an adequate brief statement explaining their reasons for not

giving at least 60 days' notice prior to terminating its employees. As a result, and to the extent

applicable, the Defendants are precluded from asserting any statutory defenses or exceptions under

§ 2102(b), as UFI's noncompliance with the brief statement requirement contravenes the WARN

Act's requirements and purpose.

## I. JURISDICTION

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C.

§ 157(a), and the Standing Order of Reference signed by Chief Judge L.T. Senter and dated August

6, 1984. While this is a "non-core proceeding" under 28 U.S.C. § 157(c), all parties have consented

to the entry of final order and judgment by this Court. See *Stipulation and Consent*, A.P. Dkt. #100.

---

[2] The Court considered the following pleadings in this Opinion and Order: The *Plaintiffs' Partial Motion for Summary Judgment* (A.P. Dkt. #109) and the *Plaintiffs' Memorandum in Support of Partial Motion for Summary Judgment* (A.P. Dkt. #111) (collectively, the "Motion for Summary Judgment); the Liquidating Trustee's *Response to Plaintiffs' Partial Motion for Summary Judgment* (A.P. Dkt. #113) and his *Brief in Response to Plaintiffs' Partial Motion for Summary Judgment* (A.P. Dkt. #114); the Non-Debtor Defendants' *Memorandum in Opposition to Plaintiffs' Motion for Partial Summary Judgment* (A.P. Dkt. #115) and the *Declaration of Ryan A. Burgett in Support of Defendants' Memorandum in Opposition of Plaintiffs' Partial Motion for Summary Judgment* (A.P. Dkt. #116); and the Plaintiffs' *Reply in Support of Partial Motion for Summary Judgment* (A.P. Dkt. #117).

## II. BACKGROUND AND FACTS

The parties do not dispute the relevant facts. UFI and its affiliates were in the business of manufacturing and distributing furniture from its facilities located in Mississippi, California, and North Carolina. On November 21, 2022, UFI provided notice that it was immediately ceasing operations and terminating most, if not all, of its approximately 2,700 employees. UFI did not provide 60-days advance notice. UFI did, however, send three separate communications to its employees, informing them that their employment was terminated and providing some information in relation to the termination. On November 21, 2022, UFI sent employees a communication that stated:

> At the instruction of the board of directors of United Furniture Industries, Inc. and all subsidiaries (the "Company"), we regret to inform you that due to unforeseen business circumstances the Company has been forced to make the difficult decision to terminate the employment of all of its employees, effective immediately, on November 21, 2022, with the exception of over the road drivers that are out on delivery. Your layoff from the Company is expected to be permanent and all benefits will be terminated without provisions of COBRA. Over the road drivers that are out for delivery will be paid for the balance of the week. Whether or not you have completed your delivery, please immediately return equipment, inventory, and delivery documents for those that have been completed to one of the following locations: Winston-Salem, N.C., Verona, Miss., or Victorville, Calif. location. To be clear, do not complete any additional deliveries. We regret that this difficult and unexpected situation has made this necessary. Additional information will be provided shortly.

(the "First Communication"), A.P.  Dkt. #109-1. A day later, on November 22, 2022, UFI sent its former employees a communication entitled "Separation & WARN Notice", which provided the following:

> This notice is being provided to you pursuant to the Worker Adjustment and Retraining Notification Act of 1988, 29 U.S.C. § 2101 et seq. ("WARN"), which requires employers to give notice to affected employees of a pending mass layoff or plant closure. Due to unforeseen business circumstances, United Furniture Industries, Inc. (the "Company") has been forced to make the difficult decision to terminate the employment of all of its employees, including those at the Verona, Mississippi facility located at 5380 Raymond Ave, Tupelo, MS 38801. As a result,

your employment with the company will end. Because the business circumstances were unforeseeable, the Company was not able to provide you further advance notice of the separation. As a result, all layoffs are effective immediately. Your layoff from the Company will be permanent, and there are no bumping rights available. You will be paid your final wages, if any, up through today's date. Any benefits from the Company, including health insurance benefits, will end immediately. Because the Company's benefit plans are terminating, you will not be eligible for continuation of benefits through the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"). Therefore, you should make immediate arrangements to procure benefits coverage, for example at Healthcare.gov. You should contact your local unemployment office for information regarding availability of unemployment insurance benefits. We regret that this difficult and unexpected situation made this necessary. We likewise thank you for your service and dedication to the Company and wish you the best in your future endeavors. For further information concerning this notice, please contact Bill Burke at (662)-397-5124.

(the "Second Communication"), A.P. Dkt. #109-2. Then, on December 9, 2022, UFI sent another

follow-up communication to its former employees:

This amended notice is being provided to you pursuant to the Worker Adjustment and Retraining Notification Act of 1988, 29 U.S.C. § 2101 et seq., which requires employers to give notice to affected employees of a pending mass layoff or plant closure.

Due to unforeseen business circumstances, and the inability to obtain sufficient financing to maintain operations, United Furniture Industries, Inc. (the "Company") made the difficult decision to terminate the employment of all of its employees and close all facilities, resulting in the end of your employment with the Company. Because the business circumstances were unforeseeable and the Company was trying very hard to obtain financing to continue operations, the Company was not able to provide you further advance notice of the separation. As a result, all layoffs were effective immediately, on November 21, 2022. Your layoff from the Company was permanent, and there are no bumping rights available.

Your wages, if any, were paid through November 21, 2022. Any benefits from the Company, including health care benefits, ended as of November 22, 2022 and there will be no continuation of benefits through the Consolidated Omnibus Budget Reconciliation Act of 1985. If you have not already done so, you should contact your local unemployment office for information regarding availability of unemployment insurance benefits.

We regret that this difficult and unexpected situation made this necessary. We again thank you for your service and dedication to the Company and wish you the best in

your future endeavors. For further information concerning this notice, please contact Bill Burke at (662)-397-5124.

(the "Third Communication"), A.P. Dkt. #109-3.[3]

On November 22, 2022, the same day the Second Communication was received, UFI's former employees filed their first complaint in the United States District Court for the Northern District of Mississippi, before eventually commencing this proceeding.[4] The Plaintiffs in this litigation are comprised of the plaintiffs from each of the consolidated proceedings, all of which are former employees of UFI. The Plaintiffs' original complaints only named UFI as a Defendant, but they eventually filed their *Second Amended Class Action Adversary Complaint for Violation of Federal Warn Act 29 U.S.C. 2101 Et Seq., and Other Labor Laws* (the "Complaint") (A.P. Dkt. #57*)* and named four additional Non-Debtor Defendants: Stage Capital, LLC, David Belford, David Belford Separate Property Trust, and the David Belford Irrevocable Trust.[5]

In response, the Non-Debtor Defendants filed their *Answer of Defendants Stage Capital, LLC, David Belford and David A. Belford Separate Property Trust to Second Amended Class Action Adversary Complaint* (A.P. Dkt. #66). Similarly, and acting on UFI's behalf, the Liquidating Trustee filed his *Answer and Affirmative Defenses to Second Amended Class-Action Adversary Complaint for Violation of Federal Warn Act 29 U.S.C 2101 Et. Seq., and Other Labor Laws* (A.P. Dkt. #69). While the Non-Debtor Defendants only asserted one defense to the 60-day notice

---

[3] For the purposes of this Opinion and Order, the Court may refer to the First, Second, and Third Communications collectively as the "Communications".

[4] *Toria Neal, on Behalf of Herself and All Others Similarly Situated v. United Furniture Industries, Inc.,* was filed on November 22, 2022 in the United States District Court for the Northern District of Mississippi: *Neal v. UFI*, Cause No. 1:22-cv-171 (N.D. Miss. Nov. 22, 2022).

[5] From the Plaintiffs' pleadings, the Court has gleaned that the Plaintiffs intend to assert that the Non-Debtor Defendants are liable for UFI's alleged WARN ACT violation(s) under the WARN Act's single employer theory, which allows parent corporations and subsidiaries to both face liability for WARN Act violations. See A.P. Dkt. #57.

requirement, i.e., that reduction of the notice period was permitted under § 2102(b)(2) because the terminations were due to business circumstances that were not foreseeable at the time notice would have been required, UFI also asserted that the 60-day period was properly shortened under § 2102(b)(1) because they were attempting to obtain capital to continue operations and that providing earlier notice would have precluded them from obtaining it.[6]

### III. DISCUSSION

The key issue before the Court on summary judgment is whether UFI's Communications with the Plaintiffs included a sufficient brief statement of the basis for reducing the notification period under § 2102(b)(3). The Plaintiffs argue that, as a matter of law, UFI's Communications— whether considered individually or collectively—fail to satisfy this requirement due to a lack of factual specificity explaining the reasons for the shortened notice. In contrast, the Defendants argue that, when read in their entirety, the Communications meet the statutory requirements. Alternatively, they assert that summary judgment is inappropriate if the Court adopts a substantial compliance standard, as genuine issues of material fact remain regarding whether the Plaintiffs were prejudiced by any alleged deficiencies.

### A. Summary Judgment Standard

The Court begins with the appropriate legal framework. A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and

---

[6] The Court will discuss these statutory exceptions or defenses more below. Nevertheless, as the Plaintiffs' note in their Reply, the Non-Debtor Defendants did not assert one of the arguably applicable statutory exceptions. But for the purposes of this Opinion and Order, the Court need not determine if any defenses have been waived. In addition, the Defendants asserted more defenses in their Answers, but those are not relevant to the Court's primary task of determining whether UFI satisfied the brief statement requirement.

that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting former Fed. R. Civ. P. 56(c)); Fed. R. Civ. P. 56(c)(1). The party seeking summary judgment bears the burden of demonstrating to the court the absence of a genuine issue of material fact. *Id.* at 323. Concerning materiality, the Supreme Court has stated that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). All reasonable doubt as to the existence of a genuine issue of material fact "must be resolved against the moving party." *Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 892 (5th Cir. 1980) (quoting *Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5th Cir. 1980)).

## B. The WARN Act Generally

Before delving into the Plaintiffs' Motion for Summary Judgment, a general discussion of the WARN Act is warranted. The WARN Act requires that covered employers[7] provide 60 days written notice to all affected employees before ordering a plant closing or mass layoff. 29 U.S.C. § 2102(a); *In re Flexible Flyer Liquidating Trust*, 511 Fed. Appx. 369, 372 (5th Cir. 2013). If the notice is given timely, i.e., 60 days or more in advance of any closing or layoff, there are only four requirements which must be included in the WARN Act notice under the Code of Federal Regulations (the "Regulations"): (1) a statement as to whether the planned action is expected to be permanent or temporary, and if the entire plant is to be closed, a statement to that effect; (2) the expected date when the plant closing or mass layoff will commence and the expected date when the individual employee will be separated; (3) an indication whether or not bumping rights exist;

---

[7] An "employer" is defined by the WARN Act as any "business enterprise" that employs 100 or more full-time individuals. 29 U.S.C. § 2101(a)(1).

and (4) the name and telephone number of a company official to contact for further information. 20 C.F.R. § 639.7(d). The Regulations promulgated to guide implementation of the WARN Act also provide that the notice given to employees must be specific and be based on the best information available to the employer at the time the notice is served. 20 C.F.R. § 639.7(a). In addition, the Regulations provide that the notice must be drafted in language understandable to the employees. *Id.* The Regulations also make clear that the advance 60-days' notice is meant to provide employees and their families time to adjust to the loss of employment, to seek alternative employment, and if needed, obtain training to qualify for new employment. *Id.*

But what is required in the notice in the event an employer fails to provide at least 60-days' notice to its employees as is the case before the Court? There are statutory exceptions that excuse employers who fail to provide the required 60-days' notice from liability. See 29 U.S.C. § 2102(b). The applicable exceptions here are known as the "faltering company" and "unforeseen business circumstances" exceptions. An employer may give reduced notice time if, at the time notice would have been required, the employer was actively seeking capital, which if obtained, would have enabled the employer to avoid or postpone the shutdown and the employer reasonably and in good faith believed giving the notice would have precluded them from obtaining the capital. 29 U.S.C. § 2102(b)(1). Further, an employer may give reduced notice if the plant closing or mass layoff was caused by circumstances that were not reasonably foreseeable as of the time that notice would have been required. 29 U.S.C. § 2102(b)(2)(A).

Employers should also include the applicable statutory exception or basis for failure to give advance notice because if the information or factual events in the notice are later found not to be the actual cause of the reduced notice, the brief statement may not apply to any other exceptions. *Alarcon v. Keller Industries, Inc.*, 27 F.3d 386, 391 (9th Cir. 1994). In any event, whether these

two exceptions, or defenses in this litigation, were appropriately explained to the employees as a

basis for reducing the 60-day notice time in the Communications will be explored more below.

### C. The Plaintiffs' Motion for Summary Judgment

The most pertinent issue to the Plaintiffs' Motion for Summary Judgment is whether the

notice given by UFI satisfied the requirements of § 2102(b)(3), which requires employers relying

on either of the above-mentioned exceptions to the 60-day notice requirement give as much notice

as practicable while also including a brief statement of the basis for reducing the notification

period. 29 U.S.C. § 2102(b)(3); 20 C.F.R. § 639.9. While neither the WARN Act nor Regulations

address the level of specificity required to satisfy the brief statement requirement, multiple courts

have addressed the issue or have attempted to address the issue. As the parties point out, the Fifth

Circuit has not adopted a test to guide lower courts in applying the WARN Act's brief statement

requirement.

With few exceptions, courts have also not provided in depth analysis of the brief statement

requirement. As such, this Court will take up interpreting and applying the WARN Act based on

the Communications sent by UFI. Because there are really no disputes as to the facts or information

provided in the Communications, the task before the Court is an application of the appropriate law.

Specifically, the Court must decide whether to apply a "strict compliance" standard advocated by

the Plaintiffs or a "substantial compliance" standard used in assessing WARN Act regulatory

deficiencies proposed by the Defendants. In deciding the brief statement issue, the Court must also

determine whether the Communications sent to the Plaintiffs may be considered collectively to

determine the sufficiency of WARN Act notice.

*1. Collective consideration of UFI's Communications*

The Plaintiffs argue that regardless of whether the Court looks at UFI's Communications separately or together, UFI failed to meet the WARN Act notice requirements. While the Court is not aware of any Fifth Circuit precedent regarding the combination of multiple communications or notices, other courts have addressed the issue and found that employers may claim the benefit of multiple communications combined for the purpose of determining the sufficiency of WARN Act notice. *In re Transcare Corp.* 611 B.R. 160, 168 (S.D.N.Y. 2020); *Varela v. AE Liquidation, Inc.,* 866 F.3d 515, 525 n.6 (3rd Cir. 2017); *Kalwaytis v. Preferred Meal Systems, Inc.,* 78 F.3d 117, 122 (3rd Cir. 1996); *Easom v. U.S. Well Services*, LLC 2023 WL 6279359, *13 (S.D. Tex. 2023). These courts have all agreed that when read fairly, the Regulations require a realistic and practical assessment of the information given to employees. *Kalwaytis*, 78 F.3d at 122. Following this reasoning, courts have taken into consideration all information provided by the employer when determining if notice is sufficient. *Id.* Nevertheless, courts which allow later communications to "cure" deficiencies in earlier notices make the effective date of the notice the date on which all requirements were met. *Id.*[8]

While courts have considered all information provided to employees to satisfy the requirements of the WARN Act, the deficiencies these employers were allowed to cure in later communications typically related to requirements provided in the Regulations. This Court, as discussed below, recognizes that the statutory requirements—particularly the brief statement requirement under § 2102(b)(3)—demand a more stringent review than the regulatory provisions. But the Court also finds that, although the WARN Act offers less leniency regarding the inclusion

---

[8] The parties did not raise the issue at the summary judgment phase, but in addition to requiring a brief statement, § 2102(b)(3) also requires notice be given "as soon as practicable". The Court is not satisfied this requirement has been met at this stage in the litigation.

of a brief statement, there is no compelling reason not to assess UFI's Communications collectively, as courts often do with the four regulatory requirements. Here, the outcome would not materially change if the Court were to evaluate each Communication in isolation for statutory compliance. The only possible difference might relate to the effective date of the notice if the Court were to find that, for example, the Second Communication cured any regulatory or statutory deficiencies from the First Communication without needing to analyze the Third Communication. Further, just because the Court considers information from multiple communications, that does not conflict with the Court's task of determining whether the information contained in the Communications satisfies the regulatory or statutory requirements. For these reasons, the Court agrees with the approach taken by other courts in reading multiple communications together when assessing whether the WARN Act notice is sufficient, including whether the brief statement requirement mandated by the statute has been satisfied.

*2. Regulatory compliance with WARN Act notice*

The Court will examine whether the Communications, when read together, satisfy the WARN Act notice requirements as provided for in the Regulations. Even though the Plaintiffs are not really challenging the regulatory requirements (bumping rights, the effective date of termination, etc.) the Court's analysis hinges on interplay between interpreting the regulatory requirements versus the statutory requirements to WARN Act cases. To that point, when assessing compliance with the four elements contained in the Regulations, all courts focus on whether the employer's notice, even if technically deficient, substantially complies with the WARN Act's overarching purpose of providing employees adequate information and time to transition following termination. See *Kalwaytis*, 78 F.3d at 121. In determining whether an employer's notice substantially complies with the purposes of the WARN Act, these courts look to what the

employees actually knew in order to determine if they were prejudiced by the deficiency in the notice. *Schmelzer v. Office of Compliance*, 155 F.3d 1364, 1370 (Fed. Cir. 1998).

For example, in *Schmelzer*, the Federal Circuit Court of Appeals applied a substantial compliance standard when evaluating whether a notice satisfied the WARN Act's regulatory requirements. *Id.* at 1369. The plaintiff, an employee of a division of the United States House of Representatives, was terminated when his employer's operations were privatized. *Schmelzer*, 155 F.3d at 1365. While the plaintiff received a letter on January 23, 1996 informing him that his employment would end on February 13, 1996, he filed suit, alleging the notice was insufficient because it was not provided at least 60 days before his termination. *Id.* Rather than adopt a strict compliance approach, the court concluded that a prior letter received by the plaintiff on December 13, 1995, although it did not comply with any of the four regulatory requirements, substantially complied with the notice requirements because it provided sufficient information for the plaintiff to understand the privatization timeline. *Id.* at 1370. The court highlighted that the WARN Act regulations permit "minor, inadvertent errors" so long as they do not defeat the purpose of the notice, which is to provide employees with time to adjust. *Id.* at 1369. In doing so, the court recognized that the purpose of the WARN Act is met when employees have enough information to make informed decisions, even if the notice itself contains minor defects. *Id.* at 1370.

Similarly, in *Marques v. Telles Ranch, Inc.*, a California district court applied the substantial compliance standard to evaluate whether an employer's notice met the WARN Act's regulatory requirements. *Marques v. Telles Ranch, Inc.*, 867 F. Supp. 1438, 1446 (N.D. Cal. 1994). The employer in *Marques* operated a seasonal lettuce harvesting business and notified its employees two days before the end of the season that the business would be ceasing its lettuce harvesting operations. *Id.* at 1440. The plaintiffs argued that the notice failed to meet the regulatory

requirements because it did not state whether bumping rights existed, failed to provide a name or phone number, and lacked a termination date. *Id*. at 1446. Despite these deficiencies, the court found that the employer's notice substantially complied with the WARN Act. *Id.* The court reasoned that the notice was given at the end of the harvesting season, and employees would not have expected to return to work the following season due to the complete cessation of operations. *Id.* Further, the court determined that the missing information, such as bumping rights, was irrelevant under the circumstances and did not prejudice the employees. *Id.* Thus, the deviations did not undermine the WARN Act's purpose of giving adequate notice. *Id.*

*Schmelzer* and *Marques* make clear that when assessing the Regulations, courts should focus on whether any deficiencies have caused harm to the employees or undermined the purpose of the WARN Act—rather than requiring a strict adherence to technical details. Turning back to the facts here, UFI's Communications satisfy the substantial compliance standard in relation to the four requirements contained in the Regulations. Looking at the First Communication sent on November 21, 2022, UFI informed its employees they had been terminated as of that date, the termination was expected to be permanent, and additional information would be provided soon. From the Second Communication sent on November 22, 2024, UFI provided to its now former employees that the termination applied to all employees, and that they could contact Bill Burke at (662)-397-5124 for any further information. Further, both the Second Communication and Third Communication contain all four requirements necessary to satisfy the WARN Act notice found in the Regulations. However, because the Defendants seek to rely on exceptions to the 60-day notice requirement, in addition to these four requirements, the Court must determine if the notice included a brief statement of the basis underlying the reduced notice.

*3. Statutory compliance with WARN Act notice*

As mentioned above, employers providing less than 60 days' notice must include, in addition to the four requirements found in the Regulations, a brief statement of the basis underlying the reduced notice. But the statute does not clearly define the level of specificity required. The Fifth Circuit has not directly addressed this question, although it has indicated that a failure to include any statement would not suffice.[9] While the Fifth Circuit remains silent on the specific content of the brief statement, other courts have taken up this issue. A few courts have applied the same substantial compliance standard articulated above to the statutory brief statement requirement, while other courts have utilized a strict compliance approach.

The Plaintiffs want the Court to adopt the Ninth Circuit's strict compliance standard, as articulated in *Alarcon v. Keller Industries, Inc.*, 27 F.3d 386 (9th Cir. 1994). They argue that Congress intended the brief statement to provide sufficient factual detail to allow employees to assess whether the shortened notice was justified. According to the Plaintiffs, a mere reference to the statutory exceptions, without more, fails to meet this requirement. In contrast, the Liquidating Trustee and Non-Debtor Defendants advocate for a more lenient substantial compliance standard discussed above which all courts use to assess the sufficiency of WARN Act notice as provided for in the Regulations. They argue that strict compliance would impose an undue burden on employers, particularly when the need to shorten the notice period arises suddenly. The Liquidating Trustee contends that a strict compliance standard would be tantamount to a "death penalty" ruling, rendering any omission fatal, which they claim is disproportionate to the purpose of the WARN Act. The Liquidating Trustee also challenges the Plaintiffs' argument about specificity, pointing

---

[9] See *Carpenters Dist. Council of New Orleans v. Dillard Depart. Stores, Inc.*, 15 F.3d 1275, 1282 n. 11 (5th Cir. 1994).

out that the first lawsuit was filed immediately after the terminations, indicating that litigation was

inevitable regardless of the level of detail provided in the communications.

The Non-Debtor Defendants further argue that the strict compliance approach would

unfairly penalize them because they allege no involvement in drafting the Communications.[10] In

addition, the Non-Debtor Defendants assert that increasing the level of specificity in the notice

does not necessarily advance the WARN Act's purpose of providing timely notice. In their view,

requiring more specific details could delay the notice process, thereby undermining the WARN

Act's primary goal of giving as much advance notice as practicable. They contend that specificity

in the notice is not correlated with the effectiveness of the notice itself.

While the parties frame the issue as requiring the Court to choose between two competing

standards, this Court finds that the only fully articulated standard for interpreting the WARN Act's

brief statement requirement comes from the Ninth Circuit's seminal decision in *Alarcon*. There,

the employer, Keller Industries, provided just one day's notice before closing three of its

manufacturing plants. *Alarcon* 27 F.3d at 388. The closure followed Continental Bank's decision

to terminate financing for Keller's outdoor aluminum lawn furniture division, which had suffered

several years of losses. *Id.* Keller had been attempting to sell the division and secure additional

capital, but these efforts had failed by the time of the closure. *Id.* The company's notice letter to

employees referenced the faltering company exception and stated that the division was not a viable

entity due to its poor financial performance. *Id.* The letter also explained that Keller had

unsuccessfully sought a buyer and new capital. *Id.*

---

[10] The Court notes that UFI's First Communication stated that it came at the "instruction of the board of directors" of UFI. A.P. Dkt. #109-1. Even though this fact may not be entirely relevant to the Court's Opinion and Order, the Court is aware that at least one of the Non-Debtor Defendants was a member of UFI's board of directors.

The employees sued, arguing that the notice was misleading because it failed to disclose that Continental's withdrawal of financing was the direct cause of the closure. *Id.* The district court granted summary judgment in favor of Keller, finding that the notice satisfied the requirements of the WARN Act. *Id.* On appeal, the Ninth Circuit focused specifically on the adequacy of Keller's brief statement under § 2102(b)(3). *Id.* at 389. After reviewing the purpose of the WARN Act, the court concluded that the brief statement must contain reasonably specific facts explaining why earlier notice could not be given. *Id.* Simply quoting the statutory exception, the court held, would not be sufficient, and the brief statement must set forth the underlying factual events that justify the shortened notice. *Id.*

Applying this standard, the Ninth Circuit found that Keller's notice provided sufficient detail regarding its efforts to sell the division and secure capital. *Id.* at 390. The letter's reference to the faltering company exception, combined with specific facts about the company's financial condition and unsuccessful attempts to find a buyer, met the statutory requirement. *Id.* The court reasoned that this information allowed employees to understand why the company could not provide earlier notice. *Id*. at 391. However, the Ninth Circuit also noted that Keller's explanation of the unforeseeable business circumstances—Continental's decision to terminate financing—was less clear. *Id.* Nonetheless, the court held that because the notice adequately explained the company's status as a faltering company, it was unnecessary to determine whether the explanation regarding Continental's decision was sufficient *Id.*

Following the rule set out in *Alarcon*, a New York district court in *Grimmer v. Lord Day & Lord* found that an employer's notice failed to meet the brief statement requirement. *Grimmer v. Lord Day & Lord*, 937 F. Supp. 255, 256 (S.D.N.Y. 1996). In *Grimmer*, the employer, a law firm, distributed a letter to its employees on September 1, 1994, notifying them that their

employment would be terminated on September 30, 1994. *Id.* The employees later sued, alleging that the employer violated the WARN Act by failing to provide the requisite 60 days' notice. *Id.* They moved for summary judgment, arguing that the employer could not rely on the statutory exceptions because its notice did not include a sufficient brief statement of the factual basis for giving shortened notice. *Id.*

Building on the Ninth Circuit's reasoning in *Alarcon*, the district court emphasized the necessity for specificity in the brief statement. *Id.* at 257. The court observed that requiring employers to provide specific factual details enhances the WARN Act's enforcement by making it more difficult for those who do not genuinely qualify for the statutory exceptions to invoke them. *Id.* This requirement, the court reasoned, increases the likelihood that employees will receive the full 60 days' notice in situations where the statutory exceptions ultimately do not shield the employer from liability. *Id.*

Analyzing the employer's notice, the court noted that it merely stated: "The firm was not able to give greater advance notice of this termination since this termination arises from unforeseeable business circumstances." *Id.* The court found that this statement failed to include any facts explaining why the notice period was shortened and was, in effect, no more than a conclusory restatement of the statutory exception. *Id.* As a result, the court concluded that the employer was precluded from relying on the unforeseen business circumstances defense. *Id.*

At least one court within the Fifth Circuit has applied the *Alarcon* standard, concluding that the information in an employer's notice was insufficient to satisfy the brief statement requirement. *Fleming v. Bayou Steel BD Holdings II LLC*, 2022 WL 266942, at *3 (E.D. La.

2022).[11] In *Fleming*, the Louisiana district court addressed the employer's failure to comply with the WARN Act when it abruptly closed the Bayou Steel mill, its corporate headquarters, and other facilities without providing the required 60 days' notice. *Id* at *1. The employer eventually provided notice to employees, stating: "because of unforeseen business circumstances and the inability to secure necessary capital, we were unable to provide you with greater advance notice." *Id.* at *3.

Following the termination of their employment, the plaintiffs filed suit, alleging that the employer's notice was deficient under the WARN Act. *Id.* at *1. They filed a motion to strike, arguing that the employer could not rely on statutory exceptions, such as unforeseeable business circumstances or the faltering company defense, because the notice did not include a brief statement of the factual basis for reducing the notice period as required by § 2102(b)(3). *Id.* The district court, while not explicitly adopting *Alarcon*, heavily relied on the reasoning from both *Alarcon* and *Grimmer* in reaching its decision. The court emphasized that the employer's notice simply repeated the statutory language, failing to provide any specific facts that would enable employees to understand why the notice period was shortened. *Id.* at *3. The court held that reciting statutory exceptions, without more, is insufficient to satisfy the WARN Act's brief statement requirement. *Id.* The court further explained that a valid brief statement must provide detailed facts explaining why it was impracticable for the employer to give 60 days' notice. *Id.*

---

[11] The Court notes that from its own research as of the date of this Opinion and Order, only five courts in the Fifth Circuit have addressed the sufficiency of WARN Act notices. See *Mwarabu v. Penncro Associates, Inc.,* 2017 WL 367543 at *5 (S.D. Tex. 2017); *Halkias v. General Dynamics Corp.,* 955 F. Supp. 695 (N.D. Tex. 1997); *Carpenters*, 15 F.3d at 1275.; *Easom v. US Well Services, LLC*, 2023 WL 6279359 *12 (S.D. Tex. 2023); and *Fleming v. Bayou Steel BD Holdings II LLC*, 2022 WL 266942 (E.D. La. 2022).

The *Fleming* court's analysis mirrored the rationale of *Alarcon* and *Grimmer*, concluding

that the purpose of the brief statement requirement is to ensure employees are given enough factual

information to assess whether the employer's shortened notice is justified. *Id.* In *Fleming*, the

employer's mere reference to "unforeseeable business circumstances" and its inability to secure

capital provided no factual basis for the employees to evaluate the legitimacy of the reduced notice.

*Id.* As a result, the court determined that the employer's failure to meet the brief statement

requirement rendered the notice legally insufficient. *Id.* Accordingly, the employer was precluded

from relying on the unforeseeable business circumstances defense. *Id*.

Differing from *Alarcon* and courts which have utilized the strict compliance approach, the

Court now turns to at least one district court within the Fifth Circuit that has applied the substantial

compliance standard to the brief statement requirement, considering whether defects in an

employer's notice prejudiced its employees. In *Easom v. US Well Services, LLC*, the defendant

terminated several employees due to a downturn in oil prices and the COVID-19 pandemic,

providing them with a notice stating that their terminations were the result of "unforeseeable

business circumstances" due to these economic factors. *Easom v. US Well Services, LLC*, 2023

WL 6279359 at *11 (S.D. Tex. 2023). In their summary judgment motion, the plaintiffs argued

that the notice did not comply with the WARN Act because it failed to refer to the shortened notice

period, and they sought to preclude the employer from relying on the unforeseeable business

circumstances defense. *Id.* at *12. The court acknowledged that the notice "clearly failed" to meet

the specific requirements of the WARN Act and did not include a brief statement for reducing the

notice period. *Id*. But it found that the employees were not prejudiced by the deficient notice

because they had been verbally informed about the reasons for the layoffs in advance. *Id*. at *13.

Thus, even though the written notice failed to fully comply, the substantial compliance standard

was satisfied because the employees had the necessary information to understand the basis for the layoffs. *Id.*

From this Court's view, the key distinction between these approaches lies in the level of deference given to the statutory text and the importance placed on formal written notice. The strict compliance courts interpret the WARN Act's brief statement requirement as mandatory, focusing on ensuring that the employer's written notice itself complies with the WARN Act's language. These courts are concerned that allowing anything less than strict adherence to the written requirements could undermine the WARN Act's protective purpose, potentially allowing employers to circumvent statutory obligations by relying on informal communications or employee knowledge.

On the other hand, and in applying the substantial compliance approach to the brief statement requirement, the *Easom* court prioritized the lack of actual prejudice to the employees, demonstrating an arguably more pragmatic approach that tolerates deviations from the statutory language if the WARN Act's broader purpose is not frustrated. Thus, the *Easom* decision can be distinguished from strict compliance cases like *Alarcon* and *Grimmer* on two grounds: (1) the *Easom* court's focus on the lack of employee prejudice in the absence of full written compliance with the WARN Act, and (2) its tolerance for extraneous information (e.g., verbal communication) to compensate for deficient written notice.

Although the Court finds other decisions on the WARN Act's brief statement requirement instructive, further analysis is necessary to clarify its own interpretation. This Court begins with a fundamental principle of statutory interpretation: the plain language of the statute is paramount. Statutory interpretation must begin with the plain language of the statute, giving terms their ordinary meaning in light of a statute's broader objectives. *U.S. v. Orellana*, 405 F.3d 360, 365 (5th

Cir. 2005). Specifically, the Court must give meaning to the statutory text in a way that respects

Congress's intent and the objectives of the WARN Act, which is primarily to protect workers by

providing them with adequate notice and time to transition in the face of impending mass layoffs

or plant closures. 20 C.F.R. § 639.1. While the text of § 2102(b)(3) clearly requires that employers

provide a "brief statement of the basis for reducing the notice period," and this Court reads that

requirement as mandatory, neither the statute nor the implementing Regulations define what

constitutes a sufficient brief statement.

Considering the ambiguity of the statutory text, the Court turns to legislative history. See

*Orellana*, 405 F.3d at 365. At first glance, the WARN Act's legislative history offers little

additional guidance. Nevertheless, as articulated in the Ninth Circuit's decision in *Alarcon*, the

court correctly cited a committee report from an earlier version of the WARN Act indicating that

employers must *explain*[12] why earlier notice was not possible. H.R. Rep. No. 100-576, at 1048

(1988); *Alarcon*, 27 F.3d at 389. This requirement necessarily implies that the explanation should

include the specific factual reasons for the shortened notice. While Congress's intent regarding the

precise contours of the brief statement requirement may not be fully articulated in the statute or its

legislative history, the overarching purpose of the WARN Act is clear: to protect workers by

ensuring that they receive sufficient notice of impending job losses. See 29 U.S.C. § 2102(a); 20

C.F.R. § 639.1(a). When full notice cannot be provided, a clear and factual explanation is essential

to fulfilling that purpose.

The statutory text requires employers to provide 60 days' notice before terminations,

although § 2102(b) permits exceptions under certain conditions. To invoke these exceptions,

---

[12] The *Alarcon* court provided a definition for the word "explain": "to make it plain or understandable." *Alarcon*, 27 F.3d at 389 (citing Webster's 9th New Collegiate Dictionary 437).

employers should include a brief statement explaining why the notice period has been shortened. The inclusion of the phrase "shall" before the brief statement requirement underscores its mandatory nature, distinguishing it from other notice requirements found in the Department of Labor's Regulations. This critical distinction, as Plaintiffs have argued, suggests that Congress intended strict adherence to this provision, with no room for leniency when employers fail to adequately explain why full notice was not given.

As discussed above, some courts have applied a substantial compliance standard in assessing the WARN Act's brief statement requirement, often focusing on whether the deficiencies in the notice prejudiced the employees. When applying this standard to the brief statement requirement, the question of whether the notice includes the required brief statement is not really answered. In fact, the Court is unaware of any court which has applied the substantial compliance approach to the brief statement requirement and determined the sufficiency of the brief statement before assessing whether any plaintiffs were prejudiced. This approach is simply misguided. The WARN Act's language is unequivocal in its demand for such a statement, and allowing employers to evade this requirement based on a lack of prejudice would render § 2102(b)(3) ineffective, thereby undermining Congress's clear intent to protect workers from sudden terminations without sufficient statutory cause.

This Court further finds the reasoning in *Grimmer* persuasive, particularly in rejecting the notion that an employer can satisfy the brief statement requirement by simply quoting statutory language. *Grimmer* rightly highlighted that the notice must go beyond mere formality and provide substantive information that enables employees to understand the specific circumstances leading to the reduced notice period. Failing to include specific circumstances in any notice could make it easier for employers who do not genuinely qualify for the statutory exceptions to invoke them

(likely as a litigation tactic), which risks rendering the protections provided in the WARN Act hollow.

While the 60-day notice period is the statute's primary requirement, when an employer seeks to invoke an exception, the brief statement becomes equally vital. The Court recognizes the rationale behind applying a substantial compliance standard to other notice provisions provided for in the Regulations, but there are issues with adopting that standard to the brief statement requirement, especially in the Fifth Circuit. In considering the sufficiency of a brief statement under the WARN Act, it is crucial to recognize that the Fifth Circuit has set a baseline requirement: an employer must, at a minimum, include some statement. See *Carpenters*, 15 F.3d at 1282 n.11. If this Court were to adopt a substantial compliance standard for assessing the brief statement, akin to how courts analyze omissions in the Regulations and shift the focus solely to whether employees were prejudiced, there would be a real risk of undermining this baseline set by the Fifth Circuit. Under such an approach, an employer could entirely omit the brief statement from the notice, breaching the statutory requirement, and yet escape liability if employees were not demonstrably prejudiced. This would create a loophole, allowing employers to evade the WARN Act's explicit obligations and effectively reducing the statutory "shall" language to a mere suggestion. Such a result would be incompatible with the Fifth Circuit's precedent, which mandates at least some acknowledgment of the brief statement requirement in the written notice itself. Allowing employers to bypass this requirement based on a lack of prejudice, as the *Easom* court has done, would erode the protections Congress intended and leave employees vulnerable to inadequate disclosures.

The Court also wants to provide clarity for the parties and any appellate court in its reconciling the different standards, i.e., substantial compliance for the regulatory requirements and

strict compliance for the statutory brief statement requirement. Such a distinction hinges on a deeper understanding of the WARN Act's core purpose and the distinct roles that each set of provisions plays in fulfilling that purpose. Both standards ultimately seek to advance the WARN Act's goal of ensuring that employees receive adequate information and notice in the event of mass layoffs or plant closures, but they approach this goal through different lenses.

The substantial compliance approach applied to the Regulations focuses on ensuring that employees are not prejudiced by technical or minor omissions. The rationale is that as long as employees receive sufficient information to understand their circumstances and plan accordingly, the WARN Act's purpose is fulfilled, even if the employer's notice contains minor deficiencies. The courts employing this standard prioritize practicality and flexibility, acknowledging that strict adherence to every detail of the regulations may not always be feasible or necessary, as long as the employee's fundamental rights to notice and information are preserved.

By contrast, the statutory brief statement requirement serves a more specific and indispensable function. Its purpose is not simply to provide general notice, but to convey the concrete, factual reasons why the employer is invoking an exception to the WARN Act's otherwise mandatory 60-day notice period. This is a critical distinction: while the Regulations guide the format and details of the notice, the brief statement requirement is the mechanism by which an employer justifies a deviation from the core protection offered by the WARN Act—advance notice to provide time to adjust to the prospective employment loss, seek alternative employment, or receive training. Omitting specific facts from the brief statement, or allowing generalized references to the statute, would undermine this justification process and weaken the statutory safeguards designed to ensure that employers cannot abuse the exceptions to the 60-day rule.

In this light, the strict compliance standard for the brief statement is essential to maintaining

the integrity of the WARN Act. While substantial compliance may be appropriate for regulatory

omissions that do not materially impact employees' understanding of their situation, the brief

statement is different. Allowing employers to provide vague or incomplete justifications for

shortening the notice period would not only fail to protect employees but would also erode the

statutory framework that Congress carefully constructed. Therefore, the reconciliation of these two

standards lies in recognizing that while minor regulatory omissions may not prejudice employees,

failing to include specific, factual reasons in a brief statement strikes at the heart of the WARN

Act's protections and cannot be excused under a substantial compliance framework. The strict

compliance standard ensures that the statute's purpose—to provide workers with meaningful,

actionable notice—is fully realized.

Based on the above reasoning, the Court rejects the substantial compliance approach when

applied to the WARN Act's brief statement requirement. Allowing employers to circumvent the

written notice requirements based on verbal communications or an absence of other prejudice

would undermine the clear statutory mandate. This Court adopts the stricter standard set forth in

*Alarcon* and *Grimmer*, concluding that employers must include specific, factual reasons in their

written notice whenever they rely on a statutory exception to the 60-day notice period. Anything

less would frustrate the very purpose of the WARN Act, which is to provide employees with the

necessary time and information to prepare for significant employment disruptions.

Accordingly, in assessing the sufficiency of the brief statement, this Court will focus on

the content of the written notice itself, requiring that it provide reasonably specific facts explaining

why the employer could not give the full 60 days' notice. Failure to do so, even if the employees

were not directly prejudiced, constitutes a violation of the statute and defeats the purpose of the

WARN Act's protections.

*5. Adequacy of UFI's Brief Statement*

Having adopted the strict compliance standard, the Court must now determine whether

UFI's Communications sufficiently set forth the factual basis required for providing reduced notice

under the WARN Act. The Court finds that they do not.[13] As outlined earlier, the faltering company

exception lets an employer shorten the 60-day notice if they were seeking funding to stay in

business and believed giving notice would hurt their chances of getting it. See 29 U.S.C.

§ 2102(b)(1). The unforeseen business circumstances exception allows less notice if a closure or

layoff happens due to unexpected events that could not have been predicted when notice was

required. See 29 U.S.C. § 2102(b)(2).[14]

After reviewing UFI's communications, the only references to the basis for the shortened

notice period lack the necessary specificity or explanation. To begin, in the First Communication,

UFI merely stated that "due to unforeseen business circumstances the Company has been forced

to make the difficult decision to terminate the employment of all of its employees . . . ." A.P. Dkt.

#109-1. The Second Communication further provided that because of unforeseen business

circumstances, "the Company was not able to provide you further advance notice of the

separation." A.P. Dkt. #109-2. Finally, the Third Communication contained two references to the

basis for reducing the notice period related to obtaining financing: "[d]ue to unforeseen business

---

[13] While UFI has asserted both the faltering company and unforeseen business circumstances exceptions as defenses, ordinarily, only one event is the actual cause of shortening the notice period. See *Carpenters,* 15 F.3d at 1281 (actual cause of reduction in workforce was merger with another company despite the presence of faltering company circumstances at the time of the merger, so the exception does not apply).

[14] Section 2102 provides three exceptions under which an employer may reduce the notice period, but the "natural disaster" exception in § 2102(b)(2)(B) is not applicable here.

circumstances, and the inability to obtain sufficient financing to maintain operations" and "the Company was trying very hard to obtain financing to continue operations." A.P. Dkt. #109-3.

Even before addressing the attempted recitation of the statutory language, the references above provide no clear basis or reason for shuttering operations, much less information indicating why the Plaintiffs did not receive more advance notice prior to termination. Further, these abstract and generalized statements, even when considered collectively, provide no more information than would have been communicated if UFI had quoted the statutory language. Indeed, had UFI recited the full language of the statute itself, employees might have received a clearer explanation, as the statutory language at least conveys that earlier notice could have affected UFI's ability to secure financing—information notably absent from the information provided.

Even though the Court is analyzing the brief statement requirement, the Regulations also apply to the entire notice, which require the notice to be specific, based on the best information available to the employer, and in an understandable language to the employees. The Court concludes that the references to the statute in the Communications fail to even satisfy those guidelines. At the time UFI issued these Communications, it was undoubtedly aware of specific facts that precluded earlier notice. These facts could have been incorporated into the notice without the significant delay UFI claims would have occurred. By failing to include these specific details, UFI rendered its notice insufficient. Here, just like the employer in *Fleming*, who provided employees with a notice that simply restates language from the statute, UFI did not provide any information, aside from language from the statute, why UFI was closing, let alone what facts precluded it from providing earlier notice.

Even more, UFI's Communications stand in stark contrast to the notice in *Alarcon*, where the employer explicitly explained that providing earlier notice would have jeopardized its ability

to secure the necessary capital or business. In *Alarcon*, the notice included concrete facts to justify

the shortened notice. Here, UFI merely indicated that it had attempted to obtain financing and that

unforeseen circumstances existed, without providing any further elaboration or information such

as an explanation of what the unforeseen circumstances UFI was experiencing. For example, did

UFI lose a large customer creating cash flow issues or was UFI seeking capital from sources which

declined to inject additional capital? While the Court acknowledges UFI's effort by including

references to the statutory language, it cannot conclude that UFI adequately conveyed the reasons

for its inability to provide earlier notice to put its employees in a position to assess the information

and act accordingly. Based on UFI's Communications, this Court is not surprised by the initiation

of litigation against UFI alleging insufficient notice shortly after being terminated. Regardless,

UFI's references to the shortened notice period fall short of the statutory requirement.

Having determined that UFI's communications did not meet the WARN Act's brief

statement requirement, the Court must assess the legal consequences of this failure. While the Fifth

Circuit has stated that defective notice should not be treated as the equivalent of no notice at all, it

has also made clear that an employer must include a brief statement to invoke any of the exceptions

under § 2102(b). See *Carpenters,* 15 F.3d at 1287 n.19. Because UFI's notice lacks an adequate

brief statement explaining the reduction in notice, the Court finds that the Communications are

legally insufficient under the WARN Act. Although the Court reserves judgment on other potential

defenses the parties have raised, UFI is precluded from relying on either the faltering company or

unforeseen business circumstances exceptions. See *Carpenters*, 15 F.3d at 1282 n.11; *In re*

*Tweeter OPCO, LLC*, 453 B.R. 534, 547 (Bankr. D. Del. 2011); *In re Dewey & LeBoeuf LLP*, 507

B.R. 522, 533 (Bankr. S.D.N.Y. 2014).

While the Court acknowledges that this outcome may have significant consequences for UFI and possibly the Non-Debtor Defendants, characterizing it as a "death penalty" is misplaced. Rather, it is the direct result of UFI's failure to comply with the statutory requirements of the WARN Act and should serve as a reminder that anyone subject to potential liability under the WARN Act should seek to ensure compliance with all requirements before issuing any notice(s). The brief statement requirement is not an optional or flexible standard but a mandatory provision aimed at ensuring transparency and protecting employees from abrupt terminations absent justified statutory exceptions. The absence of specific, factual details in UFI's notice means that it has failed to meet this obligation, and as such, it cannot avail itself of the statutory exceptions to the 60-day notice requirement.

## IV. CONCLUSION

In conclusion, the Communications sent to the Plaintiffs failed to adequately explain the factual circumstances justifying the reduction of the statutory notice period. Even assuming, arguendo, that the Defendants could meet the substantive requirements of either defense under § 2102(b), and that they provided as much notice as practicable, the Communications still lacked the mandatory brief statement required under § 2102(b)(3). The omission of specific, factual information renders the Defendants' Communications insufficient as a matter of law.

Accordingly, it is hereby **ORDERED** that the *Plaintiffs' Partial Motion for Summary Judgment* (A.P. Dkt. #109) is **GRANTED**.

##END OF ORDER##