---

**SO ORDERED,**



*Judge Selene D. Maddox*

**United States Bankruptcy Judge**

**The Order of the Court is set forth below. The case docket reflects the date entered.**

---

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| **IN RE: UNITED FURNITURE INDUSTRIES, INC.,** *et al.* | **CASE NO.: 22-13422-SDM** |
| **DEBTORS** | **CHAPTER 11**<br>**JOINTLY ADMINISTERED** |
| **TORIA NEAL, JAMES PUGH, KALVIN HOGAN, AND OTHERS SIMILARLY SITUATED** | **PLAINTIFFS** |
| **v.** | **ADV. PRO. NO.: 23-01005-SDM[1]**<br>**SUBSTANTIVELY CONSOLIDATED** |
| **UNITED FURNITURE INDUSTRIES, INC.,** *et al.* | **DEFENDANTS** |

### MEMORANDUM OPINION AND ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Before the Court are competing motions for summary judgment: the Plaintiffs' *Motion for Partial Summary Judgment* (Dkt. #206) and the Defendants' *Partial Motion for Summary*

---

[1] On August 11, 2023, the Court entered its *Order Granting Motion to Appoint Interim Co-Lead Counsel and Consolidate Adversary Proceedings* (A.P. Dkt. #36), which substantively consolidated all pending adversary proceedings concerning the Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 *et seq.* (the "WARN Act") and other labor laws and claims with this adversary proceeding. Any reference to the United States Code in this Opinion and Order will be to Title 29 unless the Court indicates otherwise.

*Judgment* (Dkt. #203). The Plaintiffs seek a determination that Defendants David Belford ("Belford") and Stage Capital, LLC ("Stage Capital") were a single employer with United Furniture Industries, Inc. ("UFI") under the WARN Act, thereby making them jointly and severally liable for damages. The non-UFI Defendants[2] move for summary judgment in their favor, arguing that none of the non-UFI Defendants meet the single employer test and that they did not exercise the requisite control over UFI's employment decisions to be held liable under the WARN Act. The Court, having reviewed the motions, responses, replies, and supporting exhibits, grants in part and denies in part the Defendants' motion and denies the Plaintiffs' motion: genuine disputes of material fact exist as to several legal issues. Accordingly, the Court denies summary judgment on several claims, which must now proceed to trial.[3]

---

[2] Multiple names have been used by the parties and this Court describing the Defendants who are not the Debtor: Non-Debtor Defendants, Non-Employer Defendants, etc. The Court will refer to these Defendants in this Opinion and Order either as the Defendants or the non-UFI Defendants.

[3] The Court considered the following pleadings in this Opinion and Order: *Non-Employer Defendants' Partial Motion for Summary Judgment* (Dkt. #203), *Non-Employer Defendants' Memorandum in Support of Its Partial Motion for Summary Judgment* (Dkt. #204), *Plaintiffs' Motion for Partial Summary Judgment* (Dkt. #206), *Plaintiffs' Memorandum in Support of Motion for Partial Summary Judgment* (Dkt. #207), *Plaintiffs' Response to Belford Defendants' Motion for Partial Summary Judgment* (Dkt. # 209), *Plaintiffs' Memorandum in Support of Response to Belford Defendants' Motion for Partial Summary Judgment* (Dkt. #210), *Trustee's Response to Plaintiffs' Motion for Partial Summary Judgment* (Dkt. #211), *Trustee's Brief in Response to Plaintiffs' Motion for Partial Summary Judgment* (Dkt. #212), *Trustee's Response to Non-Employer Defendants' Partial Motion for Summary Judgment* (Dkt. #213), *Trustee's Brief in Response to Non-Employer Defendants' Partial Motion for Summary Judgment* (Dkt. #214), *Non-Employer Defendants' Response to Plaintiffs' Motion for Partial Summary Judgment* (Dkt. #220), *Non-Employer Defendants' Memorandum in Opposition to Plaintiffs' Motion for Partial Summary Judgement* (Dkt. #221), *Non-Employer Defendants' Reply Memorandum in Support of Its Partial Motion for Summary Judgment* (Dkt. #225), *Plaintiffs' Reply to Trustee's Response to Plaintiffs' Motion for Partial Summary Judgment* (Dkt. #226), *Plaintiffs' Reply in Support of Plaintiffs' Motion for Partial Summary Judgment* (Dkt. #228).

## I.  JURISDICTION

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a), and the Standing Order of Reference signed by Chief Judge L.T. Senter and dated August 6, 1984. While this is a "non-core proceeding" under 28 U.S.C. § 157(c), all parties have consented to the entry of final order and judgment by this Court. See *Stipulation and Consent*, A.P. Dkt. #100.

## II.  BACKGROUND AND FACTS

As previously written by the Court in this adversary proceeding, UFI and its affiliates were in the business of manufacturing and distributing furniture from its facilities located in Mississippi, California, and North Carolina. This adversary proceeding arises from the abrupt termination of approximately 2,700 employees of UFI and its affiliates on November 21, 2022. The Plaintiffs, on behalf of themselves and a certified class of similarly situated former employees, bring this action mainly under the Worker Adjustment and Retraining Notification Act (the "WARN Act"), 29 U.S.C. §§ 2101–2109 seeking damages for the Defendants' failure to provide the required 60 days' notice of a mass layoff or plant closure. In addition to UFI—the direct employer—the Plaintiffs assert that Belford, in his individual capacity and as trustee of the Separate Property Trust, the David A. Belford Irrevocable Trust (the "Irrevocable Trust"), and Stage Capital are all jointly liable as a "single employer" with UFI under the WARN Act.

On November 21, 2022, without prior notice, UFI ceased operations and issued a mass layoff affecting its entire workforce. Shortly thereafter, several WARN Act class actions were filed, which were later consolidated in this Court. Following conversion of the bankruptcy case to Chapter 11, the Court appointed a Chapter 11 Trustee, who now serves as the Liquidating Trustee

and is representing UFI's bankruptcy estate in this proceeding.[4] The question now before the Court is whether summary judgment is appropriate as to the WARN Act liability of the non-UFI Defendants under the "single employer" doctrine.[5] While not an exclusive list, the following facts are material to that determination.

**A. Undisputed Facts**

1. Corporate Structure and Ownership

   - As of November 21, 2022, UFI was wholly owned by the Belford Separate Property Trust (60%) and five Belford children's trusts (40%).

   - Belford was the sole trustee of the Separate Property Trust and retained effective control over the equity interests of UFI.

   - The Irrevocable Trust had no ownership interest in UFI.

   - The Separate Property Trust and the Irrevocable Trust were revocable and irrevocable trusts, respectively, formed under Ohio law.

   - Stage Capital was a family office management company serving the Belford family and their assets and/or investments. Belford was its sole owner and chairman.

   - Jason Gabauer ("Gabauer") served as the CFO and later COO of Stage Capital.

2. Governance and Management of UFI

   - At the time of the layoff, UFI's only two board members were Belford and Gabauer, both of whom were also affiliated with Stage Capital.

---

[4] The Court previously ruled on summary judgment that because of UFI's failure to provide the Plaintiffs advanced notice and adequately explain why, all Defendants are precluded from asserting any statutory defenses or exceptions under 29 U.S.C. § 2102(b). See *Memorandum Opinion and Order Granting Plaintiffs' Partial Motion for Summary Judgment* (A.P. Dkt. #188).

[5] Of course, the Court will also discuss liability under California WARN Act, certain state law claims for unpaid vacation and paid time off (PTO) vacation, and briefly, priority of WARN damages under the Bankruptcy Code to the extent applicable on summary judgment.

- Todd Evans ("Evans") was appointed CEO of UFI in June 2022, following the removal of prior CEO Mike Watson and CFO Doug Hanby by Belford.

- Lynda Barr ("Barr") was appointed CFO shortly thereafter by Evans.

3. Management Agreement

- Stage Capital entered into a Management Services Agreement with UFI in 2014, authorizing it to provide "executive services" like those of senior corporate officers.

- Stage Capital was paid a management fee under this agreement.

- The agreement was formally terminated in August 2022, at the request of legal counsel, with the stated goal of "protecting Belford and his assets" and avoiding "piercing the corporate veil."

4. Shutdown Events

- On the evening of November 21, 2022, UFI executives Evans and Barr advised the board (Belford and Gabauer) via email that they had no authorization or funding to continue operations.

- At approximately 11:13 p.m. CST[6], Belford and Gabauer executed a written resolution authorizing the immediate termination of all employees.

---

[6] The non-UFI Defendants assert that the timeline contained in their briefs and replies are correct, but the Court disagrees. To begin, while they correctly assert that the time difference between eastern standard time and Greenwich Mean Time ("GMT") is five hours, Mississippi is in the central time zone (CST). Therefore, the time in Mississippi is six hours behind GMT. Accordingly, based on the non-UFI Defendants own exhibits in which the time reflected is GMT, the board resolution was signed by Belford at 11:13 p.m. CST on November 21, 2022. See *Non-Employer Defendants' Partial Motion for Summary Judgment* (A.P. Dkt. #s 203-14). Further, while the parties dispute the time of the first communication, the communication informing the employees that they were being terminated at the instruction of the Board of Directors was sent at 11:42 p.m. CST on November 21, 2022. See *Trustee's Response to Plaintiffs' Motion for Partial Summary Judgment* (Dkt. #s 211-2e and 2f).

- At approximately 11:43 p.m. CST, Evans and Barr caused a text message to be sent to UFI employees advising them that their employment was terminated "at the instruction of the board."

## B. Disputed Facts

1. Circumstances Surrounding UFI's Shutdown

- The Plaintiffs and the Trustee contend that Belford made the final decision to shut down UFI by refusing to provide further funding and instructing executives to "hand the keys to the bank."

- The Defendants deny this, asserting that Evans as CEO and Barr as CFO independently initiated the closure based on financial exigency, without direction or control from Belford.

- [See Pls. Memo, A.P. Dkt. #207 at 8–9; Tr. Memo, A.P. Dkt. #212 ¶¶ 38–40; Defs. Resp., A.P. Dkt. #221 at 15–16.]

2. Belford's Involvement in Executive Hiring and Oversight

- The Plaintiffs assert that Belford participated directly in hiring decisions for all C-suite positions, required consultation before offers were made, and approved salaries.

- The Defendants argue that while Belford was consulted, this conduct was routine for a majority owner and board member, and that final decisions and control over day-to-day operations rested with UFI's executives.

- [See Pls. Memo, A.P. Dkt. #207 at 13–14; Defs. Resp., A.P. Dkt. #221 at 59–60.]

3. Belford's Role in Strategic and Operational Matters

- The Plaintiffs claim that Belford was consulted on all major business decisions and that UFI executives regarded him as the final authority.

- The Defendants counter that executive authority rested with Evans and Barr, and Belford's involvement was consistent with his limited role as board chair and shareholder.

- [See Pls. Memo, A.P. Dkt. #207 at 8–11; Defs. Resp., A.P. Dkt. #221 at 56–58.]

4. Continued Involvement by Stage Capital After Contract Termination

- The Plaintiffs and the Trustee argue that Stage Capital, through Gabauer, remained involved in UFI's operations after the termination of the management agreement in August 2022, including physically working from UFI headquarters.

- The Defendants maintain that Stage Capital ceased all formal involvement with UFI upon the agreement's termination, and that any continued interactions were informal or administrative.

- [See Pls. Memo, A.P. Dkt. #207 at 16-18; Tr. Memo, A.P. Dkt. #212 ¶ 31; Defs. Memo, A.P. Dkt. #221 at 30, 46.]

5. Timing and Authorization of Employee Terminations

- The Plaintiffs assert that the mass layoff was not authorized until the board resolution was signed at 11:13 p.m. CST on November 21, 2022, and that the employee termination notice followed at 11:43 p.m. CST.

- The Defendants argue that Evans and Barr had already initiated termination procedures earlier that evening, and that the board's resolution merely formalized the shutdown.

- [See Pls. Memo, A.P. Dkt. #207 at 11–12; Defs. Resp., A.P. Dkt. #221 at 47–50.]

6. Perception of Authority Within UFI Management

- The Plaintiffs present deposition testimony from Evans and Barr indicating that they viewed Belford and Gabauer as the real decision-makers, with themselves having no practical autonomy over key matters.

- The Defendants dispute this characterization, arguing that UFI executives had operational authority and discretion to run the business.

- [See Pls. Memo, A.P. Dkt. #207 at 10–11; Defs. Memo, A.P. Dkt. #221 at 60–62.]

7. Interactions Between UFI and Stage Capital

- The Plaintiffs claim that UFI's relationship with Stage Capital went beyond conventional investment management, citing overlapping personnel, continued oversight, and strategic collaboration.

- The Defendants assert that the entities were legally and operationally distinct, with separate finances, employees, and internal systems.

- [See Pls. Memo, A.P. Dkt. #207 at 15–17; Defs. Memo, A.P. Dkt. #221 at 38-39.]

8. Restructuring of UFI's Board of Directors

- The Plaintiffs and the Trustee argue that Belford removed prior board members and replaced them with Gabauer, resulting in a two-person board wholly composed of Stage Capital representatives.

- The Defendants contend that the restructuring was consistent with Belford's duties as a board member to make the "big decisions" and his rights as majority shareholder.

- [See Tr. Memo, A.P. Dkt. #212 ¶¶ 27–30; Pls. Memo, A.P. Dkt. #207 at 9; Defs. Memo, A.P. Dkt. #221 at 45-46, 66-67.]

9. Financial Dealings with Related Entities

- The Plaintiffs allege that financial transactions involving Belford's other companies, such as UFI purchasing unsellable inventory, demonstrate entangled interests and non-arm's-length operations.

- The Defendants deny that these transactions reflect operational integration or control and characterize them as ordinary business decisions which did not benefit the non-UFI Defendants.

- [See Pls. Resp. to D MSJ, A.P. Dkt. #210 at ¶ 27; Defs. Reply, A.P. Dkt. #221 at 24-25.]

Again, while the above facts are in dispute, they are certainly not all the facts in dispute which the parties may use to support their respective positions at trial. In any event, the Court now turns to their legal significance.

### III.  DISCUSSION

As stated above, the central issue before the Court on summary judgment is whether any of the non-UFI Defendants—specifically, Belford, Stage Capital, the Separate Property Trust, and the Irrevocable Trust—may be held liable under the WARN Act as a "single employer" with UFI. The Plaintiffs move for partial summary judgment, arguing that the undisputed facts establish that Belford and Stage Capital operated as a single employer with UFI as a matter of law. The Defendants, by contrast, seek summary judgment in their favor as to all non-UFI Defendants, contending that the record shows insufficient legal or factual basis to "pierce" the corporate separateness of any of them. The Trustee, while not seeking summary judgment, opposes the non-UFI Defendants' motion and asserts that genuine disputes of material fact exist as to whether

Belford and Stage Capital[7] exercised sufficient operational control over UFI to warrant WARN Act liability.

To resolve the parties' cross-motions, the Court must assess whether the evidentiary record, when viewed in the light most favorable to the nonmoving party(ies), supports a finding of "single employer" liability. The Court will also briefly discuss the California WARN Act, state law claims for unpaid vacation or PTO vacation, and any other issue which may have been raised by the parties.

## A. Summary Judgment Standard

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting former Fed. R. Civ. P. 56(c)); Fed. R. Civ. P. 56(c)(1). The party seeking summary judgment bears the burden of demonstrating to the court the absence of a genuine issue of material fact. *Id.* at 323. Concerning materiality, the Supreme Court has stated that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). All reasonable doubt as to the existence of a genuine issue of material fact "must be resolved against the moving party." *Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 892 (5th Cir. 1980) (quoting *Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5th Cir. 1980)).

---

[7] The Trustee also argued that any entity controlled by Belford, including the Separate Property and Irrevocable Trusts, warrants further factual development at trial.

**B. Liability Under the Federal WARN Act**

1. Legal Standard for "Single Employer" Status

The threshold legal issue before the Court is whether any of the non-UFI Defendants may be held liable under the WARN Act as a "single employer" with UFI. The WARN Act imposes liability on an "employer" who orders a plant closing or mass layoff without providing the required 60 days' notice. See 29 U.S.C. §§ 2101–2104. Courts have extended WARN liability to related business entities under the "single employer" doctrine. See *Fleming v. Bayou Steel BD Holdings II, LLC*, 83 F.4th 278, 287–88 (5th Cir. 2023); *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 495–96 (3d Cir. 2001) (describing the single employer doctrine as a functional approach grounded in corporate reality); *Guippone v. BH S&B Holdings LLC*, 737 F.3d 221, 226–28 (2d Cir. 2013) (same).

The "single employer" doctrine is designed to prevent companies from avoiding WARN Act liability through fragmented corporate structures where multiple entities function in substance as a single business enterprise. See generally, *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 494 (3d Cir. 2001). While some other circuit courts of appeal may be more receptive to policy-based readings of WARN's purpose, in the Fifth Circuit, the five-factor test under 29 C.F.R. § 639.3(a)(2) provides the exclusive framework for this inquiry. See *Fleming v. Bayou Steel BD Holdings II, LLC*, 83 F.4th 278, 287 (5th Cir. 2023) ("We adhere to the regulatory framework adopted by the Department of Labor rather than expanding WARN's reach by grafting on policy goals not grounded in the statute.").

Turning to the regulations, the applicable standard is set forth in the Department of Labor's regulations at 29 C.F.R. § 639.3(a)(2), which lists five non-exclusive factors:

1.  Common ownership;

2.  Common directors and/or officers;

3.  De facto exercise of control;

4.  Unity of personnel policies emanating from a common source; and

5.  Dependency of operations.

*Fleming*, 83 F.4th at 295; *Pearson*, 247 F.3d at 483; *Guippone*, 737 F.3d at 226. No single factor is dispositive, but de facto control is often given particular weight. *Pearson*, 247 F.3d at 504; *Fleming*, 83 F.4th at 299. Courts consider these factors holistically to determine whether two legally distinct entities operated in substance as a single economic unit. See *Guippone*, 737 F.3d at 226–28.

Here, the parties dispute how the single employer test applies to each non-UFI defendant. The Plaintiffs argue that Belford and Stage Capital meet all or most of the five factors based on their ownership, control, and influence over UFI's operations. The non-UFI Defendants contend that any overlap in ownership or officers is consistent with lawful corporate governance and that none of the non-UFI defendants exercised the kind of operational control necessary to impose WARN Act liability. As such, the Court will apply this five-factor balancing test to each defendant in turn to determine whether summary judgment is appropriate as to any party.

2. David Belford's Potential Liability as a Single Employer

Whether Belford, as an individual, operated as a single employer with UFI and may be held jointly liable under the WARN Act for UFI's mass layoff is a good starting point. As noted, the WARN Act allows for joint liability where a related entity has sufficient ownership, directorship, control, and operational integration with the employer. See 29 C.F.R. § 639.3(a)(2); *Fleming*, 83 F.4th at 295. But as to individual liability, the Court is unaware of any case in which a court has held that individuals may be held directly liable under the WARN Act. While the Plaintiffs aptly

note that there is no absolute prohibition on individual liability under the WARN Act, the Fifth
Circuit Court of Appeals and courts within the Fifth Circuit have repeatedly suggested that the
statute's plain language and legislative history exclude individuals from direct liability. *Williams
v. Phillips Petroleum Co.,* 23 F.3d 930, 933 n.1 (5th Cir. 1990); *Hollowell v. Orleans Regional
Hosp.*, 1998 WL 283298 at *9 (E.D. LA. 1998); *Carpenters Dist. Council v. Dillard Dep't. Stores,
Inc.,* 778 F. Supp. 297, 316 (E.D. La. 1991), aff'd in part, rev'd in part, 15 F.3d 1275 (5th Cir.
1994).

Nevertheless, a more thorough discussion of the text and legislative history of the WARN
Act is necessary. In *Hollowell v. Orleans Reg'l Hosp. LLC*, the plaintiffs alleged they were
terminated without the required notice under the WARN Act. *Hollowell v. Orleans Reg'l Hosp.
LLC*, 1998 WL 283298, at *2 (E.D. La. May 27, 1998). Following the layoffs, the plaintiffs brought
WARN Act claims against multiple defendants, including three individuals. *Id.* at *1. The parties
filed cross-motions for summary judgment seeking a determination as to whether the individual
defendants could be held liable under the WARN Act. *Id.* at *8.

In addressing this issue, the court examined 29 C.F.R. § 639.3, which defines an
"employer" to include non-profits, public and quasi-public entities that engage in business, are
separately organized from government, and possess independent authority over personnel and
assets. *Id.* The court also relied on the statutory definition in 29 U.S.C. § 2101(a), which states that
the term "employer" means "any business enterprise," and on the corresponding legislative history,
which clarifies that the term "business enterprise" is intended to be synonymous with "company,"
"firm," or "business." *Id.* at *8–9.

Relying on the statutory text and congressional intent, the court concluded that an
individual does not qualify as an "employer" under the WARN Act and therefore cannot be held

directly liable. *Id.* at *9. However, the court acknowledged that under applicable state law, the corporate veil could be pierced, allowing individual defendants to be held liable for the obligations of the business entity. *Id.* at *10. Because veil-piercing requires a fact-intensive inquiry, the court denied summary judgment for both parties on that issue. *Id.*

To the extent applicable just as to direct liability for individuals under the WARN Act, *Hollowell*'s interpretation is consistent with another case, *Cruz v. Robert Abbey, Inc.*, 778 F. Supp. 605 (E.D.N.Y. 1991), where the court there dismissed WARN claims against a corporate officer, similarly concluding that the statutory term "business enterprise" does not encompass individuals. *Cruz v. Robert Abbey, Inc.*, 778 F. Supp. 605, 609 (E.D.N.Y. 1991). *Cruz* emphasizes that absent a legislative amendment, courts are not free to expand the statutory definition to include individuals acting in their corporate capacity. *Id.*

In contrast, and as cited by the Plaintiffs, *Mowat v. DJSP Enters., Inc.*, 2011 WL 13214330 (S.D. Fla. Apr. 28, 2011) allowed WARN Act claims against an individual executive to proceed past the pleading stage. The court in *Mowat* emphasized allegations that the executive exercised total, unchecked control over the business and directly orchestrated the layoff. *Id.* at *3. But *Mowat* was decided on a motion to dismiss and did not address the statutory text or legislative history in detail. Further, the court did not find that the executive qualified as an "employer" under the WARN Act but merely held that plaintiffs had alleged sufficient facts to explore the issue further through discovery. *Id.* at *4.

Taken together, *Hollowell* and *Cruz* provide a more persuasive interpretation of the statute. They reinforce that the WARN Act's definition of "employer" does not extend to individuals acting in a corporate capacity, absent extraordinary circumstances that justify state-law veil piercing. *Mowat*, while procedurally distinguishable, does not compel a different result in this proceeding,

particularly if the Court concludes that an individual cannot be found directly liable under the WARN Act.

Addressing the Plaintiffs' arguments on summary judgment, if the term "employer" was intended to include individuals, Congress could have included "persons" in the definition as the California legislature did with the definition relevant to California WARN discussed more below. Further, the Court believes the Plaintiffs' reliance on the lack of reference to the corporate structure of General Motors in the Conference Report is misplaced. From the Court's general observation, it is more likely that the Conferees used General Motors as an example because, as one of the world's largest and most known automobile manufacturers, it is unlikely that General Motors would be mistaken for anything other than a business enterprise.

Applying the reasoning in *Hollowell* here, the Court finds that Belford is not an "employer" under the WARN Act as a matter of law. The plain language of 29 U.S.C. § 2101(a) defines "employer" as a "business enterprise," and the legislative history supports interpreting that term to mean a company, firm, or similar organizational entity. While Plaintiffs contend that Belford exercised de facto control over UFI, such arguments are properly evaluated under the WARN "single employer" framework for other associated entities—not as a basis for direct individual liability.

Despite this Court's finding that Belford cannot be directly liable as an individual under the WARN Act, the Court agrees with *Hollowell*, but not *Cruz*, that an individual may be held liable for the debts of a corporation under certain circumstances, therefore facing indirect liability for WARN Act violations if a plaintiff can establish that veil piercing is warranted under the applicable state law. The Fifth Circuit Court of Appeals and some courts have recognized the

possibility of holding individuals indirectly liable under certain circumstances.[8] Compare *Plastisource Workers Committee v. Coburn*, 283 Fed. Appx. 181, 186 (5th Cir. 2008) (acknowledging individuals may be held liable for WARN Act violations under an alter-ego theory of liability); and *Hollowell v. Orleans Reg'l Hosp.*, 217 F.3d 379, 385 (5th Cir. 2000) (affirming judgment that imposed liability on three individuals that were found to be alter egos of the employer under state law) with *Cruz v. Robert Abbey, Inc.,* 778 F. Supp. 605, 609 (E.D.N.Y. 1991) (holding that WARN does not apply to individuals under any theory).

Courts that permit indirect liability typically look to whether an individual may be held liable for a corporation's debts under a state law theory veil piercing or alto ego theory.[9] *Hollowell*, 217 F.3d at 385-86. Here, none of the claims pled by the Plaintiffs specifically reference piercing the corporate veil or apply an alter ego theory to impose individual liability on Belford. Even so, the Plaintiffs' failure to separately plead a claim seeking to pierce the corporate veil does not preclude them from attempting to do so at this stage, namely because Belford is a named defendant in this proceeding. See *Rosson v. McFarland*, 962 So.2d 1279, 1281 (Miss. 2007) (analyzing whether corporate veil piercing elements were satisfied despite the plaintiff's failure to include the claim in pleadings); *In re Gulf States Long Term Acute Care of Covington, LLC.* 487 B.R. 713, 722

---

[8] The non-UFI Defendants are correct in noting the Fifth Circuit in *Fleming v. Bayou Steel BD Holdings L.L.C.*, 83 F.4th 278, 295 n. 14 (5th Cir. 2023) stated that the five-factor test is the sole method for determining single employer status. But the veil piercing theory applied in *Hollowell* serves a different purpose. The veil piercing or alter ego inquiry determines whether an individual can be held indirectly liable for the debts of an entity that is an "employer" under the WARN Act, not whether the individual qualifies as a single employer.

[9] The Fifth Circuit Court of Appeals has also affirmed a finding of successor liability on WARN claims based on state law. See *Rose v. Grappler Pressure Pumping, L.C.C.*, 2025 WL 416996 *2 n.1 (5th Cir. 2025). While not entirely analogous to shared liability through veil piercing, other courts have at least acknowledged additional avenues of indirect liability for WARN Act violations.

(Bankr. E.D. La. 2013) (acknowledging that using the alter ego doctrine to pierce the corporate veil is an "equitable remedy, not an independent cause of action").

At the summary judgment stage, the parties did not provide any argument or evidence in support or against whether the corporate veil should be pierced, outside of references for the first time at the hearing on the competing summary judgment motions. In addition, the Plaintiffs have not specified which entity they are attempting to prove is merely an alter ego of Belford. Simply put, to the extent Plaintiffs seek to impose indirect liability on Belford individually for any violations of the WARN Act, they must proceed under state-law veil-piercing theories. Because veil-piercing presents a fact-intensive inquiry, and the Plaintiffs have not advanced a developed theory or presented sufficient evidence under applicable state law, the Court declines to impose "indirect" WARN Act liability on Belford in his individual capacity under the Federal WARN Act at this stage.

3. Stage Capital's Potential Liability as a Single Employer

An affiliated management company may be liable under the WARN Act if it maintains an active role in employment decisions or other operational control of the employer. See *Guippone*, 737 F.3d at 228; *Pearson*, 247 F.3d at 504–05. The existence of a management agreement and shared officers is not dispositive, but ongoing operational involvement—particularly in personnel matters—may support a finding of integration. See *In re APA Transp. Corp. Consol. Litig.*, 541 F.3d 233, 245–46 (3d Cir. 2008) (affirming dismissal where parent company had no control over layoff decision).

Stage Capital entered into a Management Services Agreement with UFI that allowed it to provide executive-level services and placed key executives, including former CEO Mike Watson, across multiple portfolio companies. The Plaintiffs argue that despite the formal termination of the

agreement in August of 2022, Stage Capital continued to play a role in UFI's operations, particularly through Gabauer, who remained a director and was on-site at UFI headquarters. The Defendants argue that Stage Capital's involvement ended with the agreement's termination and that no services were rendered thereafter. After this Court's review, there are genuine issues of material fact as to whether Stage Capital maintained operational control over UFI after August of 2022 and whether that control contributed to the mass layoff. Therefore, summary judgment is denied as to Stage Capital for either the Plaintiffs or the non-UFI Defendants.

4. The Belford Separate Property Trust

A trust may be held liable under the WARN Act if it functions as an employer or exerts operational control over employment matters. *Fleming v. Bayou Steel BD Holdings II, LLC*, 83 F.4th 278, 289 (5th Cir. 2023) (noting that financial entities and other affiliated entities can be liable under WARN if they control the employer's board or operational decisions). Courts generally distinguish between entities that passively hold assets and those that act through another party to operate businesses. See *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 490 (3d Cir. 2001) (explaining that WARN Act liability requires evidence of operational control, not mere ownership or financial interest); *In re APA Transp. Corp. Consol. Litig.*, 541 F.3d 233, 244–46 (3d Cir. 2008) (finding that ownership and shared resources do not suffice absent control over employment matters). An entity like a trust is not liable merely because it owns the employer entity—liability depends on its active role in the employer's labor decisions. See *Fleming*, 83 F.4th at 297; *Guippone v. BH S&B Holdings LLC*, 737 F.3d 221, 226–27 (2d Cir. 2013) (emphasizing the importance of actual operational influence or direction over employment outcomes).

Here, the Separate Property Trust owned 60% of UFI, and Belford served as its sole trustee. The record contains evidence that Belford, acting in his role as trustee, exercised control over

UFI's board composition, executive hiring, strategic decisions, and ultimately the termination of employees. Belford's influence extended to operational and financial oversight, and the Plaintiffs assert that this was carried out via the Separate Property Trust's ownership stake. While the Plaintiffs do not seek summary judgment as to the Separate Property Trust, the non-UFI Defendants request summary judgment in its favor, arguing it merely held a passive investment.

This position, however, does not fully address the disputed facts regarding the Separate Property Trust's functional integration with Belford's control over UFI. Given the Trust's dominant ownership position, although not sufficient by itself to merit a finding of WARN liability, and Belford's dual role as both trustee and decisionmaker, there is a genuine dispute as to whether the Separate Property Trust functioned as a mere holding entity or as part of a coordinated structure through which Belford directed UFI's operations and the layoff.

5. The David A. Belford Irrevocable Trust

WARN Act liability requires that a defendant either acted as an employer or exercised sufficient control over employment-related decisions. See *Pearson*, 247 F.3d at 494–95. A passive investment trust that does not participate in management decisions cannot be held liable under WARN. *Fleming*, 83 F.4th at 289 (holding that an entity "with no control, no board involvement, and no ownership stake" is not a WARN employer); see also *Vogt v. Greenmarine Holding, LLC*, 318 F. Supp. 2d 136, 142 (S.D.N.Y. 2004) (explaining that "ownership interest, even controlling ownership interest, is not sufficient" absent evidence of involvement in labor decisions). Liability under the WARN Act must be predicated on evidence of direct or indirect operational involvement, not merely a financial or beneficial interest. See *Pearson*, 247 F.3d at 494; *Guippone*, 737 F.3d at 227–28 (requiring a functional analysis that focuses on who controlled the employment decision at issue).

In this proceeding, and in contrast to the Separate Property Trust, the Irrevocable Trust did not hold any ownership interest in UFI. It was managed by a separate trustee, Howard Belford, and is not alleged to have exercised any authority over UFI's board, finances, or employment practices. As stated above, the Plaintiffs have not moved for summary judgment as to the Irrevocable Trust and cite no evidence that it functioned in any capacity like an employer. The non-UFI Defendants move for summary judgment, asserting there is no basis in the record to support liability. The Trustee has not opposed summary judgment as to the Irrevocable Trust and has not identified any factual dispute specifically relating to it, apart from a general request for additional discovery concerning entities controlled by Belford. However, the record contains no evidence that the Irrevocable Trust exercised any operational control, made employment decisions, or played any role in the shutdown or layoffs. Accordingly, the Court grants summary judgment in favor of the David A. Belford Irrevocable Trust.

## C. Liability Under the California WARN Act

1. Legal Standard Under California Labor Code § 1400 et seq.

The Court is now faced with whether California's WARN Act ("Cal. WARN") applies to any of the non-UFI Defendants, and whether its broader definition of "employer" alters the liability analysis. Like the federal WARN Act, Cal. WARN prohibits employers from ordering a mass layoff or termination at a covered establishment without providing at least 60 days written notice to employees. Cal. Labor Code § 1401. California's WARN Act (Cal. Labor Code § 1400 et seq.) defines "employer" more expansively than the federal WARN Act, including "any *person* who directly or indirectly owns and operates the covered establishment." Cal. Labor Code § 1400(b) (emphasis added). Section 18 defines person to mean "any person, association, organization, partnership . . . ." Cal. Labor Code § 18. While it appears clear to the Court that the plain meaning

of the statute indicates that an individual may be considered an employer within the meaning of § 1401, the Court has been unable to find any published caselaw supporting individual liability under the statute.[10] Nevertheless, this Court is aware that the "entire thrust of the legislative effort in enacting the California WARN Act was to provide greater protection to California workers than was afforded under the federal law." *The Internat. Bhd. of Boilermakers, etc. v. NASSCO Holdings Inc.*, 17 Cal. App. 5th 1105, 1124–25 (2017).

Courts have taken different approaches when analyzing the single employer issue under Cal. WARN. One court has suggested that the Federal WARN Act's single employer test does not apply to claims under Cal. WARN. *In re HMR Foods Holding, LP*, 602 B.R. 855, 877 (Bankr. D. Del. 2019). There, the Delaware bankruptcy court relied on the plain language of §§ 1400 and 1401, to conclude that a parent corporation that qualifies as an employer may be liable for violations, if that employer ordered the shutdown. *Id. HMR Foods Holding* employed what this Court will refer to as the "owner and operator" test based on whether a defendant directly or indirectly "owns and operates" the business in question, including a defendant's role in ordering the shutdown. *Id.*; Cal. Lab. Code § 1400(b). Other courts, however, have applied the same five-factor test used when analyzing single employer issues under the WARN Act to Cal. WARN claims. See *In re AFA Inv., Inc.* 2012 WL 6544945 at *2-3 (Bankr. D. Del. 2012); and *In Re Consolidated Bedding, Inc.*, 432 B.R. 115, 121-22 (Bankr. D. Del 2010).

After reviewing Cal. WARN, and unfortunately, the scant existing case law analyzing the statute, this Court is inclined to adopt the "owner and operator" test as opposed to the Federal

---

[10] While the Plaintiffs cited *Su v. Capital Mailing Services, Inc.,* 2024 WL 4902513 (Cal. COA 3d Dist. 2024) in support of their argument that individuals may be held liable, the non-UFI Defendants are correct that California Rules of Court Rule 8.1115 prohibits the citation of unpublished opinions. Cal. R. Court. 8.1115.

WARN factors. To begin, the Court believes that based on the language of the statutes, Cal. WARN is intended to be applied more broadly than its federal counterpart, which includes who may be liable. See *In re HMR Foods, LP*, 602 B.R at 876. (stating that Cal. WARN was implemented to provide "stronger worker protections"). Moreover, it appears that the "owner and operator" test results in the employer responsible for the decision to terminate employees facing liability, whereas a narrower interpretation would allow that employer to shield themselves from the consequences of their decisions by structuring entities in a way that shields them from liability.[11] For these reasons, the Court believes that the "owner and operator" test, which considers the entity or person who ultimately operated the enterprise and/or made the decision to terminate employees, should be used to determine whether two or more employers may be considered a single employer.

2. Belford and Stage Capital Potential Cal. WARN Liability

Turning back to this proceeding, the Plaintiffs argue that Belford and Stage Capital fall within the definition of an "employer" under California law due to their ownership interest and alleged continued operational control over UFI's California facilities. They also claim that the terminations came directly from the board, i.e., Belford. On the other hand, the non-UFI Defendants contend that the Plaintiffs have not shown either Belford or Stage Capital "operated" the California facility in any meaningful way. They argue that all operations were managed by UFI personnel and that neither Belford nor Stage Capital meets the statutory definition. The Trustee

---

[11] The Court also declines to apply the federal WARN Act's five-factor "single employer" test in evaluating potential liability under the Cal. WARN, particularly with respect to an individual defendant. Several of the federal factors presume the existence of multiple business entities and have limited relevance when assessing whether a single individual or "person" qualifies as an "employer" under California law. That said, the Court recognizes that the inquiry into whether an individual "directly or indirectly owned and operated" the business may involve some factual overlap with the federal "de facto control" factor.

agrees that factual disputes exist as to Belford's and Stage Capital's continued role in operations, particularly considering the termination timing and ongoing involvement of Gabauer.

The Court finds that summary judgment is not appropriate under Cal. WARN for either the Plaintiffs or the non-UFI Defendants as to Belford and Stage Capital. Material factual disputes remain regarding whether these parties directly or indirectly operated (or ordered the shutdown) of UFI's California facility. The Plaintiffs and the Trustee cite Belford's role as board member and owner, as well as Stage Capital's ongoing operational presence through Gabauer, as support for liability under California law. The non-UFI Defendants argue that both entities were legally and operationally separate and did not own or operate the California facility. Because the determination of whether an entity or person "operates" a facility turns on the specific facts of involvement and oversight, the competing narratives from the parties preclude summary judgment. The Court finds that triable issues of fact remain regarding the decision making and functional role of Belford and Stage Capital in UFI's California operations. Summary judgment is denied as to both parties under the California WARN Act.

3. Separate Property and Irrevocable Trusts Potential Cal. WARN Liability

The Separate Property Trust owned 60% of UFI and was controlled by Belford, who also served as trustee. The record contains evidence that Belford—acting in his role as trustee—exercised substantial influence over the board and business strategy. It also remains a disputed issue whether the Separate Property Trust, through Belford, ordered or orchestrated the closure of UFI's California facility. Therefore, this Court concludes that Plaintiffs have presented sufficient evidence to preclude summary judgment. This Court must determine at trial whether the Separate Property Trust, as a controlling ownership vehicle acting through Belford, functionally operated and ordered the shutdown.

Turning to the other trust, the Irrevocable Trust held no ownership stake in UFI, was managed by a separate trustee, and has no evidence in the record indicating any involvement in UFI's operations, board decisions, or the closure process. The absence of any factual allegation tying the Irrevocable Trust to any operations or the decision to close the facility is sufficient for the Court to find in favor of the non-UFI Defendants. As such, the Court finds there is no triable issue and grants summary judgment in favor of the Irrevocable Trust under Cal. WARN.

### D. State Law Claims for Unpaid Vacation and PTO

The Court must now determine whether genuine issues of material fact exist regarding the Plaintiffs' claims for accrued, but unused PTO. As mentioned above, the Plaintiffs allege that they are entitled to recover PTO under the laws of the respective states in which they worked prior to their terminations. Specifically, the Plaintiffs outline four separate arguments regarding the payment of PTO. They allege that the Plaintiffs from California are entitled to payment pursuant to California Labor Code § 201, § 203, and § 227.3, that the Plaintiffs who worked in facilities in North Carolina are entitled to payment pursuant to N.C. Gen. Stat. § 95-25.1, that UFI was unjustly enriched by its failure to compensate all prior employees for their accrued paid time off, and that UFI's failure to compensate all employee's for their accrued PTO amounted to a breach of contract.[12] Alternatively, in their Motion for Summary Judgment, the non-UFI Defendants argue that because the Plaintiffs have not established a policy, practice, or the existence of a contract providing for the payment of accrued PTO upon termination, they are entitled to summary judgment on the claims for unpaid PTO under Mississippi and North Carolina law.

---

[12] While each of these four claims also seeks payment for the Plaintiffs' final week of wages, only the portion of these claims relating to accrued but unused PTO of those subject to Mississippi and North Carolina Law are addressed in the Motion for Summary Judgment.

The Court's discussion on these claims will be brief. Both North Carolina and Mississippi require that vacation or PTO payout be governed by an express employer policy, contract, or agreement. See N.C. Gen. Stat. § 95-25.2(16); *Fuselier, Ott & McKee, P.A. v. Moeller,* 507 So. 2d 63, 67 (Miss. 1987). In the absence of a written policy, employers are not required to pay accrued vacation. Courts applying these state statutes have routinely held that liability does not arise unless the employer has explicitly committed—by policy or agreement—to pay out accrued PTO. See, e.g., *Hamilton v. APV Baker, Inc.*, 2006 WL 8438684, at *8 (W.D.N.C. May. 2, 2006).

The Defendants argue, and the Plaintiffs do not dispute, that UFI had no express policy under either Mississippi or North Carolina law that would require payment of accrued vacation upon separation. The Plaintiffs do not point to any document, policy, or agreement creating such an obligation. These arguments in the Defendants Motion for Summary Judgment remain unopposed.[13] Further, at the hearing on the summary judgment motions, the Plaintiffs conceded that they were not entitled to recover for unpaid PTO under Mississippi and North Carolina Law. Accordingly, the Court finds that no genuine dispute of material fact exists regarding this issue and concludes that the Defendants are entitled to summary judgment on these claims. The Court grants summary judgment to the non-UFI Defendants on all PTO claims under Mississippi and North Carolina law.

---

[13] Although Plaintiffs filed a response to the non-UFI Defendants' summary judgment motion, they did not dispute any relevant facts or provide additional facts or legal argument regarding the claims for PTO under Mississippi and North Carolina law. But the failure to include a response does not necessarily entitle the non-UFI Defendants to summary judgment on these claims. See *In re Burkhalter*, 635 B.R. 284, 286 (Bankr. N.D. Miss. 2022) (citing *Retzlaff v. de la Vina*, 606 F. Supp. 2d 654, 656 (W.D. Tex. 2009).

**E. Bankruptcy Code Priority for WARN Damages**

The last issue that the Court will discuss briefly is priority of potential WARN Act damages. The Trustee raised the issue of whether WARN damages, if awarded, would qualify for priority status under the Bankruptcy Code. Under 11 U.S.C. § 507(a)(4)–(5), certain prepetition wage claims and benefit contributions owed to employees are entitled to priority status, up to specified dollar limits. WARN Act damages may qualify if they meet the statutory criteria. See *In re Powermate Holding Corp.*, 394 B.R. 765, 778 (Bankr. D. Del. 2008).

This issue is not dispositive of the summary judgment motions but has implications for the distribution of bankruptcy estate assets if additional WARN liability is found. Courts have addressed this issue primarily in post-judgment distribution contexts. The Trustee has raised the potential for priority treatment in later proceedings. The Plaintiffs do not request a ruling at this stage, and non-UFI Defendants do not contest it. As such, the issue of priority classification is not ripe for resolution at summary judgment and will be addressed, if necessary, after a finding of liability and damages.

## IV. CONCLUSION

For the reasons stated above, the Court concludes that genuine issues of material fact preclude summary judgment on most claims. Under the federal WARN Act, Belford cannot be held directly liable, but the Plaintiffs may still proceed with indirect state law liability theories. Disputed facts remain, however, as to whether Stage Capital and the Separate Property Trust functioned as a single employer with UFI. Summary judgment is therefore denied as to those parties. The Irrevocable Trust had no ownership interest or operational role in UFI and is entitled to summary judgment under both the federal and California WARN Acts.

Under the Cal. WARN specifically, the Court adopts an "owner and operator" standard and finds that Belford, Stage Capital, and the Separate Property Trust may qualify as employers if they directly or indirectly operated UFI or ordered the mass layoff. These claims present factual disputes and must proceed to trial. The Court also finds no triable issues regarding unpaid PTO claims under Mississippi and North Carolina law, and summary judgment is granted to the non-UFI Defendants on those claims. The issue of priority status under the Bankruptcy Code is reserved for later proceedings.

Accordingly, it is hereby **ORDERED** that the Plaintiffs' *Motion for Partial Summary Judgment* (A.P. Dkt. #206) is **DENIED**. It is further **ORDERED** that the Defendants' *Partial Motion for Summary Judgment* (A.P. Dkt. # 203) is **GRANTED IN PART** and **DENIED IN PART**.

##END OF ORDER##