**SO ORDERED,**



*(signature)*

**Judge Selene D. Maddox**

**United States Bankruptcy Judge**

The Order of the Court is set forth below. The case docket reflects the date entered.

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**

| | |
|---|---|
| IN RE: UNITED FURNITURE INDUSTRIES, INC., *et al.* | CASE NO.: 22-13422-SDM |
| DEBTORS | CHAPTER 11<br>JOINTLY ADMINISTERED |
| TORIA NEAL, JAMES PUGH, KALVIN HOGAN,<br>AND OTHERS SIMILARLY SITUATED | PLAINTIFFS |
| v. | ADV. PRO. NO.: 23-01005-SDM[1]<br>SUBSTANTIVELY CONSOLIDATED |
| UNITED FURNITURE INDUSTRIES, INC., *et al.* | DEFENDANTS |

**MEMORANDUM OPINION AND ORDER ON PRIORITY OF WARN ACT DAMAGES**

The issue currently before the Court is whether damages awarded under the WARN Act qualify for priority under the Bankruptcy Code. The Liquidating Trustee (the "Trustee") seeks a determination that the damages awarded in this adversary are not entitled to priority as "wages"

---

[1] On August 11, 2023, the Court entered its *Order Granting Motion to Appoint Interim Co-Lead Counsel and Consolidate Adversary Proceedings* (A.P. Dkt. #36), which substantively consolidated all pending adversary proceedings concerning the Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 *et seq.* (the "WARN Act") and other labor laws and claims with this adversary proceeding. Any reference to the United States Code in this Opinion and Order will be to Title 29 unless the Court indicates otherwise.

under 11 U.S.C. § 507(a).[2] Conversely, the Plaintiffs and the non-UFI Defendants urge the Court to find that the WARN Act damages are entitled to priority and should be paid prior to the general unsecured creditors. After reviewing the parties' briefs and relevant legal authorities, the Court concludes that WARN Act damages are entitled to priority under § 507(a) up to the statutory cap of $15,150.00[3] for each individual.

## I. JURISDICTION

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). All parties have consented to the entry of final order and judgment, which includes determination of the priority of WARN damages, by this Court. See *Stipulation and Consent*, A.P. Dkt. #100.

## II. BACKGROUND

As previously discussed by the Court, UFI and its affiliates were engaged in the manufacturing and distribution of furniture from its facilities in Mississippi, California, and North Carolina. This adversary proceeding arises from the abrupt termination of approximately 2,700 of UFI's employees on November 21, 2022. The Plaintiffs, individually and on behalf of a certified class of similarly situated former employees, brought this action primarily under the Worker Adjustment and Retraining Notification Act (the "WARN Act"), 29 U.S.C. §§ 2101-2109, seeking damages arising from the Defendants' failure to provide 60 days' notice of a mass layoff or plant closure.

---

[2] The Court will refer to Title 11 of the United States code for any later statutory references unless it notes otherwise.

[3] Each individual's claim is only given priority to the extent it does not exceed $15,150.00, the dollar amount applicable to cases commenced between April 1, 2022, and April 1, 2025. See 11 U.S.C. §§ 104 and 507(a)(4).

In addition to UFI, the Plaintiffs alleged that multiple other affiliated entities (the "non-UFI Defendants") were jointly and severally liable under the WARN Act. On October 18, 2024, this Court entered its *Memorandum Opinion and Order Granting Plaintiffs' Partial Motion for Summary Judgment* (A.P. Dkt. #188), finding that UFI's failure to provide a "brief statement" explaining why 60 days' advance notice was not possible as required under 29 U.S.C. § 2102(b)(3) rendered all statutory defenses to liability unavailable. Then, on April 15, 2025, the Court entered its *Memorandum Opinion and Order Denying in Part and Granting in Part Defendants' Motion for Summary Judgment and Denying Plaintiffs' Motion for Summary Judgment* (A.P. Dkt. #248), concluding that genuine issues of material fact remained for trial. However, prior to commencement of trial scheduled for May 12, 2025, the parties announced settlement between the Plaintiffs and the non-UFI Defendants.

As a result of this settlement, the sole issue remaining before the Court is whether damages awarded under the WARN Act are entitled to priority under the Bankruptcy Code. At the status hearing on May 12, 2025, the parties requested additional time to submit supplemental briefing and legal authority concerning the priority issue. The Court granted the request and set a deadline of May 21, 2025 for submission of additional briefs. Upon receipt of the parties' submissions, the Court took the issue under advisement.[4] Then, on May 27, 2025, the Plaintiffs moved for leave to file a reply brief, prompting the Trustee to file a response. The Court ultimately allowed the

---

[4] The Court considered the following pleadings: *Trustee's Trial Brief Regarding Priority of Warn Act Damages* (A.P. Dkt. #238), *Non-Employer Defendants' Brief in Response to Trustee's Trial Brief Regarding Priority of Warn Act Damages* (A.P. Dkt. #247), *Trustee's Reply Brief in Regard to the Priority of Warn Act Damages* (A.P. Dkt. #254), *Plaintiffs' Response to Trustee's Trial Brief on the Priority of WARN Damages* (A.P. Dkt. #259), *Trustee's Reply Brief in Regard to the Priority of Warn Act Damages* (A.P. Dkt. #260), *Plaintiffs' Motion for Leave to File a Reply/Rebuttal Brief* (A.P. Dkt. #261), *Trustee's Response to Plaintiffs' Motion for Leave to File a Reply/Rebuttal Brief* (A.P. Dkt. #263), and *Plaintiffs' Reply Brief Regarding the Priority of WARN Damages* (A.P. Dkt. #265).

submission of a reply brief and considered additional arguments made by the Trustee in his response to the motion for leave to file the reply brief.

## III. DISCUSSION

### A. Overview of the Parties' Arguments

As briefly mentioned above, the parties dispute whether damages awarded under the WARN Act qualify for priority status under § 507(a)(4)–(5). The Trustee opposes priority classification, arguing that WARN damages do not constitute "wages" or "severance" under the Bankruptcy Code. Alternatively, both the Plaintiffs and the non-UFI Defendants argue that WARN damages function as substitute wages or severance pay and are therefore entitled to priority treatment, subject to the statutory cap.

The Trustee contends that because the WARN Act is silent on how damages should be classified in bankruptcy, the Court must look to the "essence of the statute" and apply traditional principles of statutory interpretation. He argues that the structure of § 507(a) reflects no clear congressional intent to prioritize WARN damages and that reading priority into the statute would impermissibly broaden its scope. He further maintains that WARN damages do not constitute "earned" wages or severance, as the employees performed no work or services during the notice period and the compensation is not tied to the length or quality of employment. According to the Trustee, the Fifth Circuit has expressly rejected the notion that restitutionary remedies may be elevated to priority status, and the plain language of the Bankruptcy Code limits priority to compensation actually "earned" through work.

The non-UFI Defendants disagree, arguing that WARN Act damages should be treated as priority wage claims under § 507(a)(4) or as contributions to benefit plans under § 507(a)(5). They assert that these damages are intended to compensate employees for lost income due to the

employer's failure to provide advance notice, and that courts across jurisdictions have recognized WARN damages as falling within the ordinary meaning of wages or severance. They further contend that the statutory damages available under WARN serve a compensatory, rather than punitive, function, aligning with the protective purposes of both the WARN Act and the Bankruptcy Code. The non-UFI Defendants also argue that providing priority treatment to these claims is consistent with bankruptcy policy favoring the protection of workers and that even some decisions cited by the Trustee acknowledge WARN damages may qualify as priority claims.

The Plaintiffs present a substantially similar position, arguing that WARN damages constitute either wages or severance within the meaning of § 507(a)(4). They contend that the backpay remedy under the WARN Act is compensatory in nature, designed to place employees in the position they would have been in had proper notice been given. According to the Plaintiffs, this backpay is indistinguishable from other forms of wage-based compensation and should be treated accordingly. They cite several decisions in which courts have recognized WARN damages as "earned" wages or severance and argue that the calculation of damages using the employee's ordinary wage rate reinforces this classification. The Plaintiffs also suggest an alternative view, asserting that WARN damages may be considered "earned" in the same way that accrued vacation or paid time off is earned, even if not tied to specific hours worked. They reject the Trustee's assertion that restitutionary classification bars priority, arguing that the determination of whether damages are compensatory or punitive is a matter of statutory interpretation rather than equitable analysis. In their view, the term "backpay" as used in the WARN Act mirrors traditional remedies designed to make employees whole, and the nature and function of such payments justify priority treatment under the Bankruptcy Code.

### B. Treatment of WARN Act Damages under the Bankruptcy Code

In bankruptcy, debtors are rarely able to pay all their creditors in full. *In re Powermate Holding Corp.*, 394 B.R. 765, 771 (Bankr. D. Del. 2008). For this reason, the Bankruptcy Code's priority system is considered fundamental to its operation.[5] *Czyzewski v. Jevic Holding Corp.,* 580 U.S. 451, 464 (2017). The Bankruptcy Code establishes a tiered priority scheme for unsecured claims. Relevant here, § 507(a)(4) grants fourth-level priority to allowed unsecured claims, capped at $15,150.00 per individual, for "wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual," provided those amounts were earned within 180 days before the petition date or cessation of business, whichever is earlier. See 11 U.S.C. § 507(a)(4)(A). Section 507(a)(5) affords fifth-level priority to claims for "contributions to an employee benefit plan . . . arising from services rendered within 180 days" of the petition or cessation of business. The amount of this priority is limited to the number of covered employees multiplied by $15,150.00, reduced by the total amount already granted under § 507(a)(4). See 11 U.S.C. § 507(a)(5)(A)–(B).

The damages provision of the WARN Act provides that an employer who violates the statute "shall be liable to each aggrieved employee who suffers an employment loss" for "back pay" and "benefits under an employee benefit plan." 29 U.S.C. § 2104(a)(1). Notably, while the statute refers to amounts owed to a governmental unit as "civil penalties," it does not use similar language to describe damages owed to employees. Compare 29 U.S.C. § 2104(a)(3) and 29 U.S.C. § 2104(a)(1). When interpreting statutory language, courts give words their ordinary and plain

---

[5] Despite the Trustee's assertion that the WARN Act's silence on bankruptcy treatment requires the Court to rely solely on statutory construction, as the parties will see below, the Court believes the classification of claims is governed by the Bankruptcy Code's priority scheme, which provides the controlling framework for determining how claims are treated in bankruptcy.

meaning and enforce the statutory text as written unless it is ambiguous. *United States v. Moore*, 71 F.4th 392, 395 (5th Cir. 2023). The term "back pay" as used in § 2104(a)(1) has consistently been understood to carry its common meaning; namely, wages, benefits, or other compensation lost due to a violation of the statute. *Carpenters Dist. Council of New Orleans v. Dillard Depart. Stores, Inc.*, 15 F.3d 1275, 1283 (5th Cir. 1994).[6] Because this common understanding of "back pay" fits squarely within the language of § 507(a)(4), which prioritizes claims for "wages, salaries, or commissions, including vacation, severance, and sick leave pay", many courts have concluded that WARN Act damages fall within the scope of priority wage claims under the Bankruptcy Code.[7]

1. The Supreme Court's Guidance in *Jevic*

Despite the above, the Trustee contends that the Fifth Circuit has rejected the proposition that WARN Act damages qualify as "back pay" in the ordinary sense of the term and, by extension, argues that such damages do not fall within the scope of "wages" under § 507. The Court disagrees. Because each party has cited and discussed the Supreme Court's decision in *Czyzewski v. Jevic Holding Corp.*, the Court begins its analysis there. In *Jevic*, the Bankruptcy Court for the District of Delaware approved a structured dismissal that permitted payment to general unsecured creditors ahead of former employees holding WARN Act claims—effectively bypassing the statutory priority scheme established by the Bankruptcy Code. *Czyzewski v. Jevic Holding Corp.,* 580 U.S. 451, 455 (2017). The employees appealed through successive levels of review, ultimately bringing

---

[6] The Plaintiffs aptly point out although the court in *Carpenters* cited a case suggesting WARN Act backpay is not actually backpay but merely calculated the same way, its use of the "But see" signal indicates the Fifth Circuit viewed the statement as contradictory. See *Carpenters* at 1283; The Bluebook, R. B1.2, at 5 (21st ed. 2020).

[7] See e.g., *In re Beverage Enterprises, Inc.* 225 B.R. 111, 116 (Bankr. E.D. PA. 1998); *Saxion v. Titan -C- Manufacturing, Inc.,* 86 F.3d 553, 561 (6th Cir. 1996); *In re Cargo, Inc.,* 138 B.R. 923, 928 (Bankr. N.D. Iowa 1992); *In re Riker Indus., Inc.,* 151 B.R. 823 (Bankr. N.D. Oh. 1993); and *In re Kitty Hawk, Inc.,* 255 B.R. 428, 439 (Bankr. N.D. Tex. 2000).

the issue before the Supreme Court. *Id.* at 461-62. The Supreme Court held that, absent the affected creditor's consent, a bankruptcy court may not approve a distribution scheme that violates the Bankruptcy Code's priority structure. *Id.* at 471.

While the Trustee is correct that the Supreme Court in *Jevic* did not discuss why the claims held by those employees were entitled to priority under § 507(a)(4), the Trustee's reliance on that omission is misplaced. The Supreme Court's reasoning presupposed that the employees' WARN damages were entitled to priority treatment under § 507(a)(4), and its holding turned on the impermissibility of deviating from the statutory priority scheme. If those claims had not qualified for priority, then no violation would have occurred when the bankruptcy court approved distributions to general unsecured creditors ahead of the WARN claimants. That the Supreme Court found such a distribution improper necessarily implies that the claims in question were deemed priority wage claims. The Court, therefore, concludes that *Jevic* supports the view that WARN Act damages are properly classified under § 507(a)(4) and weighs significantly in favor of granting priority status to such claims.

2. The Trustee's Objections and Contrary Authority

Although the Court finds that *Jevic* implicitly affirms the treatment of WARN Act damages as priority wage claims, it also finds unpersuasive the Trustee's assertion that the Fifth Circuit has rejected this view in *Fleming v. Bayou Steel BD Holdings II, L.L.C.*, 83 F.4th 278 (5th Cir. 2023). There, former employees brought WARN Act claims against the owner of their employer following a mass layoff. *Fleming*, 83 F.4th at 284. The district court struck the plaintiffs' demand for a jury trial, and the employees appealed. *Id.* The Fifth Circuit noted that the WARN Act is silent as to whether it provides a right to trial by jury and does not express a clear intent on that issue. *Id.* at 289. The court then turned to the two-pronged analysis required by the Seventh Amendment,

asking first whether the action would have been considered legal or equitable in nature at common law, and second whether the remedy sought is legal or equitable. *Id.* Applying that framework, the Fifth Circuit concluded that the remedy provided by the WARN Act is equitable in nature and that the plaintiffs were therefore not entitled to a jury trial. *Id.* at 293.

The Court does not, however, read *Fleming* as rejecting the notion that WARN Act damages may be compensatory or that they fall outside the scope of § 507(a)(4).[8] Rather, the decision focuses narrowly on the question of jury entitlement and classifies the WARN remedy as equitable for that limited purpose. Importantly, *Fleming* did not address the priority of WARN claims under the Bankruptcy Code,[9] nor did it analyze whether such damages should be treated as "wages" for purposes of § 507(a). As such, it offers little guidance on the issue now before the Court and does not undermine the reasoning adopted by other courts recognizing WARN Act damages as compensatory and entitled to priority.

Again, the Court does not take issue with the Fifth Circuit's decision in *Fleming*, it concludes that the inquiry presented here, i.e., how WARN Act damages should be classified under the Bankruptcy Code, is fundamentally distinct from the constitutional issue addressed in *Fleming*. That case concerned the applicability of the Seventh Amendment, which is not at issue here. The Trustee is correct in pointing out that the WARN Act is silent on the treatment of claims in bankruptcy proceedings. However, that silence is not dispositive, as it is the Bankruptcy Code—not the WARN Act—that governs the classification and priority of claims in bankruptcy.

---

[8] The Court further notes that in *Staudt v. Glastron, Inc.*, 92 F.3d 312 (5th Cir. 1996), the Fifth Circuit employed a similar analytical approach as in *Fleming* when addressing another issue on which the WARN Act is silent: the applicable statute of limitations. While the court in *Staudt* ultimately did not adopt a specific state statute of limitations, it reasoned that "[i]f we consider WARN's remedial goal and damages available under the statute, it is analogous to an action on a debt for wages owed." *Id.* at 316.

[9] Notably, *Fleming* makes no reference to the Bankruptcy Code's priority scheme.

As previously discussed, § 507(a)(4) provides that allowed unsecured claims of up to $15,150.00 per individual for "wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual," are entitled to priority. See 11 U.S.C. § 507(a)(4). Separately, the WARN Act states that employers who violate the statute are liable to affected employees for "back pay."[10] 29 U.S.C. § 2104(a)(1)(A). The Fifth Circuit has interpreted the term "back pay" in the WARN Act to carry its ordinary meaning of wages and benefits. See *Carpenters*, 15 F.3d at 1283. Although *Fleming* evaluated the equitable nature of WARN damages for purposes of jury trial rights, it did so only because the statute was silent on that constitutional issue. That reasoning has no bearing on whether such damages fall within the substantive wage provisions of § 507(a)(4). The Bankruptcy Code clearly defines which claims receive priority, and this Court sees no ambiguity in its application to WARN Act back pay.

Accordingly, the Court concludes that the Fifth Circuit's classification of WARN damages as equitable under the Seventh Amendment does not alter the ordinary meaning of the term "wages" or preclude such damages from qualifying for priority treatment under the Bankruptcy Code.[11] If Congress intended a different result, either in enacting the WARN Act or in drafting § 507, it could have clarified that intention. In the absence of such clarification, this Court must enforce the statutes as written. WARN Act damages for back pay fall squarely within the priority provisions of the Bankruptcy Code.

---

[10] Black's Law Dictionary defines "backpay" as "[t]he wages or salary that an employee should have received but did not because of an employer's unlawful action in setting or paying the wages or salary." BACKPAY, BLACK'S LAW DICTIONARY (11th ed. 2019).

[11] See *Saxion v. Titan-C-Manufacturing, Inc.*, 86 F.3d 553, 561 (6th Cir. 1996) (stating that applying the well-established meaning of the term "back pay" to its use in the WARN Act corresponds with the legislative history and that adopted by the Fifth Circuit in *Carpenters*.).

Not to exclude any arguments made by the Trustee, he also relies heavily on the decision of the United States Bankruptcy Court for the District of Arizona in *In re First Magnus Financial Corp.*, 390 B.R. 667 (Bankr. D. Ariz. 2008). In *Magnus*, a group of employees was terminated without the required 60 days' notice just five days before the employer filed for bankruptcy. *Magnus*, 390 B.R. at 671. The employees subsequently brought claims under the WARN Act seeking treatment of their damages as administrative expenses under § 503(b). *Id.* The bankruptcy court noted that the issue was one of first impression and framed its analysis around three core considerations: (1) whether the statute was clear on the question presented; (2) if not, whether Congress's intent could be ascertained; and (3) whether that intent supported the requested priority treatment. *Id.*

Concluding that the statute was ambiguous on this issue, the court turned to legislative intent. *Id.* at 677. After analyzing the language of the WARN Act, pre-BAPCPA treatment of WARN claims, and the scope of administrative priority under § 503(b), the court held that WARN Act claims arising from prepetition terminations did not qualify as administrative expenses. *Id.* The *Magnus* court's holding was therefore limited to the classification of WARN damages under § 503(b), not under the wage priority provisions of § 507(a)(4). As such, its reasoning is not directly applicable to the present case, which concerns whether WARN damages are "wages" or "severance" entitled to priority, not whether they qualify as administrative expenses.

While the Court agrees with the outcome in *Magnus* and acknowledges the thoughtful and thorough nature of that court's discussion, the analysis in *Magnus* focused specifically on whether damages owed to employees terminated prepetition qualify as administrative expenses under § 503. See *Magnus*, 390 B.R. at 676–79. That is not the issue before this Court. Here, the question is whether WARN Act damages fall within the scope of wage-based priority claims under §

507(a)(4), not whether they are entitled to administrative expense treatment. Moreover, even the *Magnus* court recognized that WARN damages may receive priority treatment under § 507(a)(4). Specifically, it held that where employees were terminated before the petition date, they retained "priority over unsecured creditors" up to the statutory cap, and any WARN damages exceeding that cap would be treated as general unsecured claims. *Id.* at 679. Accordingly, rather than undermining the application of § 507(a)(4), *Magnus* affirms that WARN Act damages may, at a minimum, qualify for priority as wage claims.

   3. Other Considerations Supporting Priority Treatment

Finally, the Court disagrees with the Trustee's assertion that WARN Act damages are not "earned" within 180 days of the filing. As previously discussed, the Court does not interpret the Fifth Circuit's decision in *Fleming* as undermining the reasoning adopted in earlier cases—reasoning with which this Court aligns.[12] When employees are terminated without the notice required by the WARN Act, they are deprived of a benefit granted by federal law. In exchange for the loss of this statutory protection, the WARN Act entitles them to compensation equivalent to the wages and benefits they would have received during the 60-day notice period. These damages are not speculative or punitive. They represent compensation for a lost employment opportunity that would have otherwise been realized within the relevant statutory window.

To hold otherwise would create a perverse incentive: employers could violate the WARN Act and then evade liability simply by seeking bankruptcy protection. Such an interpretation would effectively render the statute unenforceable in precisely the circumstances where its protections are most needed. The Court declines to adopt a reading of the statute that would so easily defeat

---

[12] See *In re Cargo, Inc.*, 138 B.R. 923 (Bankr. N.D. Iowa 1992) and *In re Kitty Hawk, Inc.*, 255 B.R. 428 (Bankr. N.D. Tex. 2000).

its remedial purpose. The Court is not persuaded that Congress intended to provide employees with a substantive right under federal law, only to allow that right to be extinguished (absent certain exceptions that were not applicable in this proceeding) when an employer files for bankruptcy. Thus, the Court concludes that WARN Act damages, which represent compensation for notice-period wages wrongfully denied, are "earned" within the meaning of § 507(a)(4) and are entitled to priority up to the statutory cap.

Further, the Court is mindful of the practical consequences that would result from classifying WARN Act damages solely as general unsecured claims. Such a determination would significantly impair the enforceability of the WARN Act by discouraging qualified legal representation for affected employees. WARN Act litigation is often brought by plaintiffs' counsel on a contingency fee basis, with the understanding that counsel will be compensated from any recovery obtained. If WARN Act damages are treated as general unsecured claims, any resulting recovery would be significantly diluted through the bankruptcy distribution process, jeopardizing plaintiffs' counsel's ability to recover the full amount of agreed-upon attorneys' fees—particularly in contingency arrangements where compensation depends on a meaningful distribution.

This economic disincentive threatens to chill enforcement of the WARN Act by making it financially infeasible for counsel to bring valid claims on behalf of employees. That result would frustrate the WARN Act's remedial purpose of protecting employees from abrupt mass terminations. While this concern does not override the statutory text, it does support a construction of the Bankruptcy Code that harmonizes its provisions with the enforcement mechanisms Congress clearly intended under the WARN Act. Recognizing WARN damages as earned wages entitled to priority under § 507(a)(4) ensures both the integrity of the bankruptcy process and the continued enforceability of federal labor protections in the bankruptcy context.

## IV. CONCLUSION

For the reasons stated above, the Court concludes that damages awarded under the WARN Act fall within the scope of priority wage claims under 11 U.S.C. § 507(a)(4). The statutory text, relevant case law, and the remedial purpose of the WARN Act all support the conclusion that back pay owed for the failure to provide notice constitutes "wages" or "severance" within the meaning of the Bankruptcy Code.

The Court rejects the Trustee's characterization of these damages as "unearned" or "restitution" and finds no basis in the Bankruptcy Code or relevant precedent to deny priority treatment where the damages clearly compensate employees for lost income tied to the notice period. Additionally, the Court is persuaded that a contrary interpretation would frustrate the purpose of both the WARN Act and the Bankruptcy Code's priority structure by limiting employee remedies in the very context where they are most needed. Accordingly, the Court holds that WARN Act damages are entitled to priority under § 507(a)(4), subject to the statutory cap of $15,150.00 for each individual.

##END OF ORDER##